PHILLIP C. WIGGINS, PETITIONER v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, RESPONDENT

No. 918SC52

(Filed 4 February 1992)

**State § 12 (NCI3d)— dismissal of Caswell Center employee—no just cause**

Respondent did not have just cause to terminate petitioner's employment as a health care technician at the Caswell Center where petitioner became upset when a charge nurse informed him that the bathing procedure for the Caswell Center residents had been changed; petitioner became angry and argued with the charge nurse while questioning her about the reason for the change; when the charge nurse became upset and began

to cry, petitioner apologized and controlled his behavior; petitioner did not refuse to bathe his patients on the day in question; there was no indication that the incident caused a serious disruption of the normal operations of his work unit which affected the residents and employees of the unit; and defendant's questioning of the change in procedure did not rise to the level of insubordination.

**Am Jur 2d, Civil Service § 63.**

APPEAL by respondent from order entered 31 October 1990 in LENOIR County Superior Court by *Judge Robert H. Hobgood.* Heard in the Court of Appeals 15 October 1991.

Petitioner was employed as a developmental health care technician at the Caswell Center in Kinston, North Carolina. At the time this action arose, he had been employed at the Center for 11 years. Petitioner worked in the Dewey unit which is a geriatric unit with 18 residents aged 50 to 90 years old. The residents are moderately to severely retarded and most have been institutionalized for a long time.

In April 1985, petitioner was having delusions — hearing and seeing things that were not real. On 22 April 1985, petitioner was placed on mandatory medical leave. He was committed to Cherry Mental Hospital due to his behavior. Petitioner was diagnosed as having a permanent schizophrenic disorder which can be controlled by medication. The administrator of petitioner's unit first became aware of petitioner's illness at this time.

Petitioner returned to work in May 1985. He continued to work from May through October without incident. In late October, petitioner began to exhibit behavior similar to his behavior during the preceding April. Once again, he was placed on mandatory medical leave for two weeks. In November, his mandatory medical leave was extended. The administrator contacted a nurse from the County Mental Health Clinic who had counseled petitioner after his mandatory leave in April. At this time, the administrator learned petitioner required continuing treatment. Consequently, the administrator made petitioner's opportunity to return to work contingent upon his cooperating with a treatment plan. Petitioner agreed and returned to work in December 1985.

On 15 February 1986, petitioner was involved in an incident which resulted in his dismissal. Upon arriving at work, the unit

charge nurse informed petitioner that the bathing procedure for the residents had been changed without notice. Starting that day, the technicians would have to bathe all patients by 7:00 p.m. The change in procedure upset the petitioner. Prior to the change, there was no set time limit; technicians had to bathe the residents prior to the end of their shift at 11:00 p.m. Many residents had numerous bowel accidents during the shift. Consequently, the technicians preferred to bathe the residents as late in their shifts as possible in order to avoid having to bathe the residents several times during their shift. Petitioner requested the charge nurse to explain why the change was made so he would understand and could explain it to the technicians whom he supervised. The charge nurse said the change was made to assure the bathing was done. Petitioner then became angry and continued to question the charge nurse who became upset and began to cry. Petitioner also tried, albeit unsuccessfully, to contact the nurse coordinator with regard to the bathing procedure change. When petitioner saw that the charge nurse had begun to cry, he apologized and controlled his behavior. This, and the April incident, were the only times the charge nurse had had a problem with petitioner during his 3 years of employment at the Dewey unit.

As a result of this incident, the administrator suspended petitioner pending an investigation of his alleged insubordinate behavior. On 26 February 1986, petitioner was dismissed for reasons of personal misconduct.

Petitioner followed proper administrative procedure to obtain review of his dismissal. After a hearing, the Administrative Law Judge (hereinafter "ALJ") submitted a recommended decision to the State Personnel Commission (hereinafter "Commission") in which she concluded petitioner should be reinstated by the Commission. She also concluded the Commission should order the petitioner to be examined by a psychiatrist to determine his ability to resume employment, and arrange for determination of petitioner's disability eligibility if it was determined he was incapable of returning to work. Furthermore, she recommended respondent be ordered to investigate the reasonable accommodations which would allow petitioner to satisfactorily perform his job for as long as possible.

The Commission adopted the findings of fact as found by the ALJ but refused to adopt her recommended decision. Instead, the Commission concluded respondent had just cause to dismiss peti-

WIGGINS v. N.C. DEPT. OF HUMAN RESOURCES

[105 N.C. App. 302 (1992)]

tioner and respondent's decision to terminate petitioner's employment was not based on an impermissible consideration of his illness.

Petitioner filed a petition for judicial review with the Superior Court of Lenoir County. The trial court reversed the decision of the Commission. In pertinent part, the trial court held that the findings of fact did not support the Commission's conclusion that respondent had just cause to terminate petitioner's employment. Further, the trial judge adopted the recommended decision of the ALJ in that he incorporated the same conditions for petitioner's reinstatement as were specified by the ALJ. Respondent appeals from that order.

*Paul L. Jones for petitioner-appellee.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General David M. Parker, for respondent-appellant.*

WELLS, Judge.

As his first assignment of error, respondent contends the trial court erred in concluding the findings of fact did not support the Commission's conclusion that petitioner was dismissed for just cause. We find no merit to this assignment.

A reviewing court may modify or reverse the agency's decision if the substantial rights of the petitioner may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(4) Affected by other error of law;

(5) Unsupported by substantial evidence. . . in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B-51(b) (1991). In the petition for judicial review, petitioner alleged, among other things, that respondent had "failed to provide sufficient evidence to overcome its burden of proof to support petitioner's dismissal." Petitioner further contended the Commission erred in concluding respondent had just cause to terminate his employment. If it is alleged on appeal that the agency's findings, conclusions, or decisions are unsupported by substantial evidence or that they are arbitrary or capricious, then the proper standard of review is the whole record test. *Brooks, Com'r of Labor*

*v. Rebarco, Inc.*, 91 N.C. App. 459, 372 S.E.2d 342 (1988). Our review of a final agency decision is limited to the question of whether the trial court failed to properly apply the review standard set forth in N.C. Gen. Stat. § 150B-51 (1991). *In re Kozy*, 91 N.C. App. 342, 371 S.E.2d 778 (1988), *disc. review denied*, 323 N.C. 704, 377 S.E.2d 225 (1989). Thus, the question on appeal is whether the trial court properly applied the whole record test in this case.

The Commission adopted the findings of fact contained in the recommended decision of the ALJ. If, at the superior court level, the party appealing to this Court did not object to the findings of fact adopted by the Commission, those findings are binding on the superior court and binding for purposes of our review. *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 397 S.E.2d 350 (1990), *cert. denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). The respondent did not note any objection or exception to those findings at the superior court level. Therefore, the findings of fact, as found by the ALJ and adopted by the Commission, were binding on the trial court and constitute the whole record. *Id.* Thus, the trial court had to determine whether those findings reflected substantial evidence to support the Commission's conclusion that respondent had just cause to terminate petitioner's employment.

A permanent employee, subject to the State Personnel Act, can only be discharged for just cause. N.C. Gen. Stat. § 126-35(a) (1991). The statute does not define "just cause" but the words are to be given their ordinary meaning. *Reed v. Byrd*, 41 N.C. App. 625, 255 S.E.2d 606 (1979). Petitioner was dismissed for "personal conduct including insubordination, conduct unbecoming to a state employee, failure to maintain a satisfactory and harmonious relationship with employees, and serious disruption of the normal operations of [his] work unit, affecting both the residents and employees of the unit." We find the facts adopted by the Commission do not reflect substantial evidence to support the Commission's conclusion that "petitioner's behavior constituted personal conduct and in fact was just cause for his dismissal."

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and is more than a scintilla or a permissible inference. *Thompson v. Board of Education*, 292 N.C. 406, 233 S.E.2d 538 (1977). (Citations omitted). The findings indicate that petitioner was not insubordinate. He did not refuse to bathe his patients and in fact did bathe his

patients on the day in question. Furthermore, there was no indication the incident caused a serious disruption of the normal operations of his work unit which affected both the residents and employees of the unit. The findings reflect petitioner was not abusive. He did nothing to harm the residents. His questioning the change in procedure did not rise to the level of insubordination. Further, every other staff member also questioned the change. Although petitioner's anger did not fit the circumstance and he briefly argued with the charge nurse, he subsequently apologized for upsetting her. The argument between petitioner and the charge nurse lasted about 5 minutes and the entire incident only lasted for approximately one hour. Based on the findings in the record before us, we conclude that the trial court properly concluded the findings did not adequately support the Commission's conclusion that respondent had just cause to dismiss petitioner.

We have carefully reviewed respondent's other two assignments of error and find them to be without merit.

Affirmed.

Judges PARKER and WYNN concur.