FRANKLIN R. DeWITT, Plaintiff v. EVEREADY BATTERY CO., INC., Defendant

No. COA00-695

(Filed 19 June 2001)

**1. Products Liability— manufacture of batteries—implied warranty of merchantability—defective product**

The trial court erred by granting summary judgment in favor of defendant corporation based on its conclusion that defendant did not breach the implied warranty of merchantability by manufacturing defective batteries that plaintiff purchased which caused his injuries, because the evidence viewed in the light most favorable to plaintiff reveals that: (1) a reasonable person could find plaintiff properly placed the batteries into a lantern and was putting the batteries to their ordinary use when he was injured; (2) a reasonable person could find the leakage of fluid from the batteries was a malfunction of the batteries based on plaintiff properly placing the batteries into the lantern; and (3) plaintiff was not contributorily negligent as a matter of law when an ordinary prudent person under the circumstances may not have been aware that he had come into contact with battery fluid, may not have known that the moisture on his sock came from fluid leaking from the battery, and may not have taken prompt action to remove the fluid from his skin.

**2. Products Liability— manufacture of batteries—implied warranty of merchantability—adequacy of warning**

The trial court did not err by granting summary judgment in favor of defendant corporation based on its conclusion that defendant did not breach the implied warranty of merchantability by manufacturing batteries with an alleged inadequate warning, because: (1) the record does not contain substantial evidence that any inadequacy in the warning proximately caused plaintiff's injuries; and (2) plaintiff's injuries would have occurred even if the warnings on the batteries had been more prominent and conspicuous, and contained information regarding injuries resulting from potassium hydroxide exposure as well as appropriate medical treatment.

**3. Products Liability— manufacture of batteries—safer alternative design**

The trial court did not err by granting summary judgment in favor of defendant corporation based on its conclusion that defendant did not unreasonably fail to adopt a safer design for its batteries that plaintiff purchased which caused his injuries when defendant did not add an indicator dye to the potassium hydroxide contained in the batteries, because the record does not contain any evidence that: (1) plaintiff's proposed alternative design was practical, feasible, and otherwise could have reasonably been adopted by defendant at the time the batteries were manufactured; (2) this alternative design would render the batteries a safer product; and (3) this alternative design would have prevented or substantially eliminated the harm caused by exposure to potassium hydroxide. N.C.G.S. § 99B-6.

**4. Products Liability— manufacture of batteries—negligence—adequacy of warnings**

The trial court did not err by granting summary judgment in favor of defendant corporation based on its conclusion that defendant was not negligent in its manufacture of the batteries purchased by plaintiff which caused his injuries, because: (1) the record does not contain evidence that any inadequate warning on the batteries proximately caused plaintiff's injuries; and (2) it is not permissible to infer manufacturer negligence from a product defect which has been inferred from a product malfunction. N.C.G.S. § 99B-5.

Judge CAMPBELL dissenting.

Appeal by plaintiff from order filed 7 March 2000 by Judge Richard L. Doughton in Iredell County Superior Court. Heard in the Court of Appeals 17 April 2001.

*Homesley, Jones, Gaines, Homesley & Dudley, by Clifton W. Homesley and Andrew J. Wingo, for plaintiff-appellant.*

*Templeton & Raynor, P.A., by Kenneth R. Raynor and Erik A. Schwanz, for defendant-appellee.*

GREENE, Judge.

Franklin R. DeWitt (Plaintiff) appeals an order filed 7 March 2000 granting summary judgment in favor of Eveready Battery Co., Inc. (Defendant).

### DeWITT v. EVEREADY BATTERY CO.

[144 N.C. App. 143 (2001)]

In a complaint filed 10 September 1997, Plaintiff alleged products liability claims against Defendant based on theories of negligence and breach of warranty. Plaintiff's pleadings and deposition testimony allege the following: On 10 December 1995, Plaintiff purchased a battery-operated Coleman lantern and eight Eveready "Energizer" D cell batteries from a Wal-Mart in Mooresville, North Carolina. The batteries, which were purchased in four separate packages each containing two batteries, were manufactured by Defendant. After making the purchase, Plaintiff took the lantern and the batteries home and followed instructions that came with the lantern regarding how to install the batteries into the lantern. Plaintiff did not see any safety warnings on the batteries or battery packages, and he testified, "I can't really say I looked at the battery packages because they're just batteries. I took [the batteries] out of the container and knew what I was going to do with them—what I wanted them for." Plaintiff did not recall whether the lantern package contained any safety warnings. Plaintiff did not notice whether he placed the batteries into the lantern in the proper direction; however, Plaintiff testified he was familiar with installing batteries and he assumed he had installed the batteries properly. Plaintiff "knew it could be dangerous" to place batteries into an object in the wrong direction.

After Plaintiff installed the batteries in the lantern, the lantern did provide some light; however, Plaintiff was not satisfied with the "[b]rightness" of the lantern. On the following day, Plaintiff decided to remove the batteries from the lantern and return the lantern to Wal-Mart. As Plaintiff placed the lantern between his ankles and began removing the batteries, he noticed fluid on at least one of the batteries. Plaintiff described the fluid as "slimy feeling," and he testified: "I didn't think anything of it at the time. Shortly thereafter, I felt a little tingle on my ankle. I didn't give that any thought at all at the time. I just figured it felt like something nipped me, like a . . . spider bite or something like that." Plaintiff "pulled down his sock and noticed a slightly red area . . . [and] also noticed that his sock was moist"; however, Plaintiff did not experience any "serious discomfort" and "didn't really give it a second thought."[1] Additionally,

---

1. We note that Plaintiff made contradictory statements in his deposition regarding whether he noticed the moisture on his sock before or after he returned the lantern to Wal-Mart. Plaintiff, however, is bound by his statement in his verified complaint that he noticed moisture on his sock and a "tingling on his ankle" upon removing the batteries from the lantern and prior to the time that he left his home to return the lantern to Wal-Mart. *See Western Enterprises, Inc. v. Selective Insurance Company*, 125 N.C. App. 36, 41, 479 S.E.2d 243, 247 (1997) ("parties are bound by admissions and allegations within their pleadings unless withdrawn, amended[,] or otherwise altered pursuant to N.C.R. Civ. P. 15").

Plaintiff noticed the base of the lantern was "a little moist" and had a "slimy feeling." Plaintiff washed his hands because he "didn't know what [the fluid] was" and he thought it might have been either "condensation" or "perspiration." Plaintiff stated "[t]he last place [he] would have thought [the moisture] came from was the batteries." Plaintiff then drove to Wal-Mart to return the lantern. As Plaintiff was driving home from Wal-Mart, he felt a "[w]arm feeling almost like a burning" on his foot. When he arrived home, approximately ten minutes after leaving Wal-Mart, he removed his sock and discovered "the whole heel of [his] foot was black." Plaintiff immediately drove himself to a hospital, where he was diagnosed as having "third and fourth degree alkaline chemical burns to his right ankle." While at the hospital, Plaintiff discovered the burns were caused by potassium hydroxide, a chemical contained in the batteries. As a result of the burns, Plaintiff "suffered permanent disfiguring and debilitating injuries to his ankle." Plaintiff testified that at the time he purchased the batteries, he knew that the substance contained in batteries could "[b]urn your skin" and could cause serious injury.

In an affidavit filed 1 October 1999, Plaintiff made the following pertinent statements: "I was aware at the time of my injury that aged batteries could in some way be dangerous"; "at the time of my injury, I did not know that newly purchased batteries could leak within 30 hours after taking them out of the package"; "at the time of my injury, I did not know that the substance from the inside of an Energizer D cell battery could soak through my clothes without burning or discoloring the cloth"; "at the time of my injury, I did not know that the substance from the inside of an Energizer D cell battery could cause the 3rd and 4th degree burns that I received when the substance soaked through my sock and came into contact with my skin"; and "though I did not particularly look for warnings on the package or the batteries themselves, the warnings were so inconspicuous that they did nothing to draw my attention to them."

Joseph Crawford Hubbell, Jr. (Hubbell), a chemist and bacteriologist, testified in his deposition that he performed tests to determine the alkalinity of an Energizer D cell battery and a sock sent to him by Plaintiff. The battery had an alkalinity reading of 10.6 and the sock had an alkalinity reading of 7.10. Hubbell testified based on the alkalinity readings that the materials tested "ha[d] a high alkalinity." If materials with such alkalinity readings came into contact with a person's skin "[i]t would be very corrosive." In an affidavit dated 30 September 1999, Hubbell made the following statements: "in my opin-

ion, an indicator type dye, such as phenolphthalein, could be added to the solution of Potassium Hydroxide that is contained in Energizer D cell batteries"; "in my opinion, the addition of such substance would not adversely affect the composition or function of Energizer D cell batteries"; and "[t]he addition of this dye would allow the user to see the alkaline substance if it leaked out of the battery."

Terrance Telzrow (Telzrow), the manager of standards, product safety, and environmental affairs for Defendant, gave deposition testimony regarding how Energizer D cell batteries function and the methods used by Defendant to test such batteries for leaks during the manufacturing process. Telzrow also testified regarding a safety device called a "Belville fail-safe device," which serves as a venting mechanism that allows gases to escape from a battery if pressure in the battery reaches a certain level. Telzrow stated that when pressure builds inside a battery, the nylon inside the battery expands. When such expansion occurs, spurs in the venting mechanism "cut the nylon and relieve the pressure" by allowing gas to escape from the battery and, as a result of the holes created by the spurs, fluid also escapes from the battery. If this venting mechanism were not in place, a battery containing built-up pressure would explode. Telzrow stated four occurrences that can cause pressure to build up in a battery are: "[re]charging [the battery]," "putting [a battery] in backwards," "gross contamination [in the battery]," and mixing old and new batteries.

Subsequent to Plaintiff's injury, Telzrow and his work assistant conducted tests on the batteries Plaintiff used in the lantern. The tests included weighing the batteries and taking X-rays of the batteries. Based on the low weights of two of the batteries, Telzrow concluded two of the batteries had leaked. The batteries that leaked had a "bulge," which resulted from "internal pressure built up in the batter[ies]." Based on the X-rays, Telzrow concluded the Belville fail-safe device had activated in the batteries that leaked. Additionally, Telzrow concluded the activation of this venting mechanism was caused by the batteries being "charged," and this charge in the batteries was not caused by the batteries being "driven into reverse," which results from old batteries being mixed with new batteries, or by "gross contamination."

Telzrow testified that a warning is placed on the back packaging for D cell batteries manufactured by Defendant. The warning, which is approximately 3/4 of an inch by 1/2 an inch in size, states: "Do not dispose in fire, recharge, put in backwards, mix with used or other

battery types[;] may explode, leak and cause personal injury." The warning does not contain any instructions regarding what action a person should take if he or she is exposed to potassium hydroxide or the types of injuries that can result from exposure to potassium hydroxide. Telzrow stated potassium hydroxide is a colorless substance, and Defendant has never examined whether adding color to the mixture of potassium hydroxide would result in a safer product.

William Wayne Beaver (Beaver), a witness for Plaintiff, gave deposition testimony that he is an electrical engineer who has worked in the field of research and development of product designs and has investigated the causes of product failures. Beaver's work experience did not specifically involve batteries and he was not trained in the manufacturing or engineering of batteries. Beaver testified that in connection with Plaintiff's case, he performed research specifically relating to batteries. Beaver stated in regard to the use of a venting mechanism in batteries that he did not "have any criticism of [the] use of a venting mechanism" and that a venting mechanism is a "proper design" for alkaline batteries such as the ones purchased by Plaintiff. Beaver concluded that the batteries at issue did leak alkaline materials and the leakage may have been caused by a "manufacturing defect." Beaver stated possible manufacturing defects are " 'a small hole in the positive metal case or negative metal top' " or "a gap or tear in the non-metallic insulating seal between the positive metal case and the negative metal top"; however, Beaver was unable to state whether either of these defects were present in the batteries purchased by Plaintiff. Beaver acknowledged the possibility that another expert might be able to examine X-rays of the batteries to determine whether they leaked as a result of a properly functioning venting mechanism or as a result of a manufacturing defect; however, Beaver was unable to make that determination. Additionally, in Beaver's opinion, if it were shown that the venting mechanism had been initiated, it would be "strong evidence" the batteries had functioned properly. Beaver was unable to state whether the batteries contained any defects that may have caused the venting system to malfunction.

On 2 September 1999, Defendant filed a motion for summary judgment on the ground "there is no genuine issue as to any material fact . . . and [Defendant] is entitled to judgment as a matter of law." In an order filed 7 March 2000, the trial court granted summary judgment in favor of Defendant on all of Plaintiff's claims.

**DeWITT v. EVEREADY BATTERY CO.**

[144 N.C. App. 143 (2001)]

The issues are whether: (I) the record contains substantial evidence Defendant breached the implied warranty of merchantability by (A) manufacturing defective batteries and/or (B) manufacturing batteries with inadequate warnings; (II) the record contains substantial evidence Defendant unreasonably failed to adopt a safer design for Energizer D cell batteries by failing to add an indicator dye to the potassium hydroxide contained in the batteries; and (III) the record contains substantial evidence Defendant was negligent in its manufacture of the batteries purchased by Plaintiff.

"Summary judgment is proper when there is no genuine issue as to any material fact." *Johnson v. Trustees of Durham Tech. Cmty. Coll.*, 139 N.C. App. 676, 680, 535 S.E.2d 357, 361, *appeal dismissed and disc. review denied*, 353 N.C. 265, —— S.E.2d —— (2000); N.C.G.S. § 1A-1, Rule 56 (1999). "An issue is genuine where it is supported by substantial evidence." *Johnson*, 139 N.C. App. at 681, 535 S.E.2d at 361.

I

Implied Warranty of Merchantability

Plaintiff argues the record contains substantial evidence Defendant breached the implied warranty of merchantability by manufacturing a defective product and by manufacturing a product containing an inadequate warning.

A products liability claim may be premised on the contract principles of warranty. *Red Hill Hosiery Mill, Inc. v. MagneTek Inc.*, 138 N.C. App. 70, 75, 530 S.E.2d 321, 325-26 (2000); N.C.G.S. § 99B-1.2 (1999). N.C. Gen. Stat. § 25-2-314, which establishes the implied warranty of merchantability, states in pertinent part:

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

. . . .

(c) are fit for the ordinary purposes for which such goods are used; and

. . . .

(e) are adequately contained, packaged, and labeled as the agreement may require[.]

N.C.G.S. § 25-2-314(2) (1999). A products liability claim based on a defendant's alleged manufacture of unmerchantable goods under section 25-2-314 requires a plaintiff to prove:

> (1) the defendant warranted the product (express or implied) to plaintiff, (2) there was a breach of that warranty in that the product was defective [or was in some other condition rendering it unmerchantable] at the time it left the control of the defendant, and (3) the defect [or other condition] proximately caused plaintiff damage.

*Red Hill*, 138 N.C. App. at 75, 530 S.E.2d at 326; *Reid v. Eckerds Drugs*, 40 N.C. App. 476, 480, 253 S.E.2d 344, 347, *disc. review denied*, 297 N.C. 612, 257 S.E.2d 219 (1979).

"[C]ontributory negligence . . . bars a products liability claim against a manufacturer or seller based on breach of implied warranty." *Nicholson v. American Safety Utility Corp.*, 346 N.C. 767, 773, 488 S.E.2d 240, 244 (1997); N.C.G.S. § 99-4 (1999). "A plaintiff is contributorily negligent when he fails to exercise such care as an ordinarily prudent person would exercise under the circumstances in order to avoid injury." *Newton v. New Hanover County Bd. of Education*, 342 N.C. 554, 564, 467 S.E.2d 58, 65 (1996). Additionally, "[a] plaintiff, who is aware of a known danger, but fails to avoid it, is contributorily negligent." *Martishius v. Carolco Studios, Inc.*, 142 N.C. App. 216, 225, 542 S.E.2d 303, 309 (2001). The granting of summary judgment based on a plaintiff's contributory negligence is appropriate "[o]nly where the evidence establishes the plaintiff's own negligence so clearly that no other reasonable conclusion may be reached." *Nicholson*, 346 N.C. at 774, 488 S.E.2d at 244.

A

Defective Product

[1] Plaintiff first argues the record contains substantial evidence Defendant breached the implied warranty of merchantability by manufacturing defective batteries. We agree.

A product defect may be shown by evidence a specific defect existed in a product. Additionally, when a plaintiff does not produce evidence of a specific defect, a product defect may be inferred from evidence the product was put to its ordinary use and the product malfunctioned. *Red Hill*, 138 N.C. App. at 76-77, 530 S.E.2d at 327.

**DeWITT v. EVEREADY BATTERY CO.**

[144 N.C. App. 143 (2001)]

*ordinary use*

In this case, viewing the evidence in the light most favorable to Plaintiff, the record shows Plaintiff followed the instructions that came with the lantern regarding how to install the batteries; Plaintiff "knew it could be dangerous" to improperly install batteries; Plaintiff was familiar with how to properly install batteries; and, though Plaintiff did not specifically notice whether the batteries were properly installed, he assumed he had installed the batteries properly. Based on this evidence, a reasonable person could find Plaintiff properly placed the batteries into the lantern and, thus, a reasonable person could find Plaintiff was putting the batteries to their ordinary use when he was injured.

*malfunction*

In this case, the evidence shows the batteries purchased by Plaintiff are designed to leak when an increase in pressure activates the venting mechanism. Thus, a properly functioning battery will leak under certain conditions that cause an increase in pressure. Telzrow testified these conditions, in which leakage is not a malfunction, include: "[re]charging [the battery]," "putting [a battery] in backwards," "gross contamination [in the battery]," and mixing old batteries with new batteries. The undisputed evidence shows two of the batteries purchased by Plaintiff leaked a potassium hydroxide solution, and this leakage occurred because of increased pressure inside the batteries that activated the venting mechanism. Telzrow was able to conclude pressure did not build in the batteries purchased by Plaintiff as a result of gross contamination or as a result of placing old batteries with new batteries. Additionally, there is no evidence in the record that Plaintiff recharged the batteries. Based on this evidence and because the evidence could support a jury conclusion that Plaintiff properly placed the batteries into the lantern, a reasonable person could find that the leakage of fluid from the batteries was a malfunction of the batteries. Accordingly, the evidence is sufficient to raise a genuine issue of material fact regarding whether the batteries were defective.[2] *See Red Hill*, 138 N.C. App. at 77-78, 530 S.E.2d at 327 (evidence from which a jury could find that a portion of a light fixture malfunctioned is sufficient to raise a genuine issue of material fact regarding whether the light fixture was defective even

---

2. Defendant does not argue in its brief to this Court that Defendant did not warrant the batteries or that any defect in the batteries was not the proximate cause of Plaintiff's injuries. We, therefore, do not address these issues. N.C.R. App. P. 28(b)(5).

though the record also contained evidence the light fixture did not malfunction).[3]

*contributory negligence*

Defendant argues in its brief to this Court that, even assuming the record contains substantial evidence the batteries were defective, Defendant was entitled to summary judgment on this claim because Plaintiff was contributorily negligent as a matter of law. We disagree.

In this case, viewing the evidence in the light most favorable to Plaintiff, the record shows Plaintiff noticed a "slimy" fluid on at least one of the batteries and on the base of the lantern; after removing the lantern from between his ankles, Plaintiff felt "a little tingle on [his] ankle"; Plaintiff "pulled down his sock and noticed a slightly red area . . . [and] also noticed that his sock was moist"; Plaintiff washed his hands because he "didn't know what [the fluid] was"; and "[t]he last place [Plaintiff] would have thought [the moisture] came from was the batteries." The record does not contain any evidence that Plaintiff knew the moisture on his sock came from the batteries. We cannot say, as a matter of law, that an ordinarily prudent person under the circumstances would be aware he had come into contact with battery fluid. Furthermore, even assuming an ordinarily prudent person would have known the moisture was fluid that had leaked from the batteries, we cannot say as a matter of law that an ordinarily prudent person under the circumstances would have taken prompt action to remove the fluid from his skin. Whether Plaintiff was contributorily negligent is therefore an issue to be determined by the jury. Accordingly, because the record contains substantial evidence Defendant breached the implied warranty of merchantability by manufacturing a defective product, the trial court's 7 March 2000 order granting summary judgment in favor of Defendant on this claim is reversed.

B

Inadequate Warning

[2] Plaintiff argues the record contains substantial evidence Defendant breached the implied warranty of merchantability by manufacturing a product containing an inadequate warning; thus, the trial

_____

3. We note that Plaintiff does not argue in his brief to this Court and the record does not contain any evidence of a specific defect in the batteries; rather, Plaintiff's sole argument is that a defect can be inferred from the evidence.

court erred by granting summary judgment in favor of Defendant on this claim. Specifically, Plaintiff contends the warning was inadequate because it did not provide information regarding the types of injuries that may be caused by exposure to potassium hydroxide or appropriate treatment for exposure to potassium hydroxide, and the warning was neither sufficiently "prominent" nor "conspicuous."

The failure of a manufacturer to provide adequate warnings of a product's dangerous propensities may render a product unmerchantable under section 25-2-314. *Reid*, 40 N.C. App. at 482, 253 S.E.2d at 348-49. A manufacturer, however, may not be held liable for a claim based on inadequate warnings unless the failure to provide adequate warnings was a proximate cause of the plaintiff's injuries. *Red Hill*, 138 N.C. App. at 75, 530 S.E.2d at 326. "Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injures, and without which the injuries would not have occurred[.]" *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984).

In this case, evidence regarding the severe physical injury that can be caused by contact with potassium hydroxide, in conjunction with evidence the batteries are designed with venting mechanisms that may cause potassium hydroxide to leak from them, is sufficient evidence to raise a jury question regarding whether the warning, which did not contain any information regarding treatment for exposure to potassium hydroxide, was inadequate. Nevertheless, assuming without deciding that the warning on the battery package was inadequate and rendered the batteries unmerchantable, Plaintiff must produce substantial evidence the inadequate warning proximately caused his injury. As noted in Section I(A) of this opinion, the record does not contain any evidence that Plaintiff knew at the time he removed the batteries from the lantern that his ankle had been exposed to battery fluid. Rather, it was not until after Plaintiff sought treatment at the hospital that he discovered the moisture was caused by a substance coming from the batteries. As Plaintiff was not aware that he had been exposed to battery fluid, Plaintiff's injuries would have occurred even if the warnings on the batteries had been more "prominent" and "conspicuous" and contained information regarding injuries resulting from potassium hydroxide exposure as well as appropriate medical treatment for such exposure. Accordingly, because the record does not contain substantial evidence that any inadequacy in the warning proximately caused Plaintiff's injuries, the

trial court properly granted summary judgment in favor of Defendant on this claim.[4]

## II

### Inadequate Design

[3] Plaintiff argues he "has offered evidence of a safer, practical, feasible[,] and otherwise alternative design or formulation that could have been reasonably adopted" by Defendant which could have prevented Plaintiff's injury; therefore, summary judgment should not have been granted in favor of Defendant on Plaintiff's inadequate design claim. We disagree.

To establish a products liability claim based on inadequate design or formulation pursuant to N.C. Gen. Stat. § 99B-6, a plaintiff must prove "that at the time of its manufacture[,] the manufacturer acted unreasonably in designing or formulating the product" and "that this conduct was a proximate cause of the harm for which damages are sought." N.C.G.S. § 99B-6(a) (1999). Additionally, a plaintiff must prove one of the following:

(1) At the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.

(2) At the time the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

*Id.* N.C. Gen. Stat. § 99B-6(b) provides a list of seven non-exclusive factors to be considered when determining whether a manufacturer

---

4. Additionally, Plaintiff alleges in his complaint that Defendant breached the implied warranty of fitness for a particular purpose, pursuant to N.C. Gen. Stat. § 25-2-315. The record, however, does not contain any evidence Plaintiff used the batteries for a "particular purpose" under section 25-2-315 rather than for an "ordinary purpose." *See* N.C.G.S. § 25-2-315 official commentary (1999) (noting goods are used for a "particular purpose" when they are used for a purpose peculiar to the particular buyer, in contrast to goods a buyer uses for an "ordinary purpose" for which such goods are used). Additionally, Plaintiff makes no argument in his brief to this Court regarding his claim under section 25-2-315. We, therefore, do not address this claim. *See* N.C.R. App. P. 28(b)(5).

acted "unreasonably" under section 99B-6(a). N.C.G.S. § 99B-6(b) (1999). A plaintiff is not required to present evidence on all of these factors in order to meet his burden of proving a defective design claim, as some of these factors may not be relevant to a particular plaintiff's claim. For example, factor (3), "[t]he extent to which the design or formulation conformed to any applicable government standard," may not be relevant to a particular product; and factor (7), "risks associated with the alternative design or formulation," would not be relevant to an inadequate design claim that was not based on the showing of an alternative design or formulation. Nevertheless, the plaintiff must present substantial evidence the manufacturer "unreasonably failed" to adopt an alternative design or formulation under section 99B-6(a)(1) or manufactured a product with a design or formulation "so unreasonable that a reasonable person" would not use or consume the product under section 99B-6(a)(2). A showing that a defendant acted unreasonably under section 99B-6(a)(1) requires evidence the proposed alternative design or formulation was "a safer, practical, feasible, and otherwise reasonable" design or formulation; that the alternative design or formulation "could then have been reasonably adopted"; the alternative design or formulation "would have prevented or substantially reduced the risk of harm" complained of; and the alternative design or formulation would not have "substantially impaired the usefulness, practicality, or desirability of the product." N.C.G.S. § 99B-6(a)(1).

In this case, the evidence shows potassium hydroxide is a colorless solution that can cause burning when it comes into contact with a person's skin. Plaintiff presented evidence, in the form of an affidavit of Hubbell, a chemist and bacteriologist, that phenolphthalein "could be added to the solution of Potassium Hydroxide that is contained in Energizer D cell batteries." Hubbell gave the following opinions in his affidavit regarding this alternative design: "the addition of [an indicator dye] would not adversely affect the composition or function of Energizer D cell batteries"; and "[t]he addition of this dye would allow the user to see the alkaline substance if it leaked out of the battery." The record, however, does not contain any evidence this alternative design was practical, feasible, and otherwise could have reasonably been adopted by Defendant at the time the batteries were manufactured; the record does not contain any evidence this alternative design would render the batteries a safer product; and the record does not contain any evidence this alternative design would have prevented or substantially eliminated the harm caused by exposure to potassium hydroxide. Hubbell's mere statement that composition and

function of the battery would not be affected by the addition of indicator dye is not sufficient evidence from which a jury could find Defendant was unreasonable in failing to adopt an alternative design containing indicator dye under section 99B-6(a)(1). Accordingly, the trial court properly granted Defendant's motion for summary judgment as to this claim.[5]

## III

### Negligence

[4] Plaintiff also asserted products liability claims against Defendant based in negligence. First, Plaintiff alleged Defendant was negligent by placing inadequate warnings on the batteries. As noted in section I(B) of this opinion, the record does not contain evidence that any inadequate warning on the batteries proximately caused Plaintiff's injuries.[6] Thus, the trial court properly granted summary judgment in favor of Defendant on this claim.

Additionally, Plaintiff alleged Defendant was negligent by manufacturing a defective product. As noted in section I(A) of this opinion, the record contains substantial evidence from which a reasonable person could infer, based on evidence the batteries were put to their ordinary use and malfunctioned, that the batteries were defective. Nevertheless, "[i]t is not . . . permissible to infer manufacturer negligence from a product defect which has been inferred from a product malfunction." *Red Hill*, 138 N.C. App. at 77 n.7, 530 S.E.2d at 327 n.7. As the record does not contain any evidence Defendant was negligent in the manufacture of the batteries, the trial court properly granted summary judgment in favor of Defendant on this claim.

In summary, we reverse and remand the portion of the trial court's 7 March 2000 order granting summary judgment in favor of Defendant on Plaintiff's claim for breach of implied warranty of mer-

---

5. Plaintiff states in his brief to this Court that Defendant manufactured a product with an inadequate design because "Defendant has failed to make improvements to the product[']s[] safety device" since at least 1985. The record contains no evidence the design of the Belville fail-safe device was inadequate. We, therefore, do not address this issue.

6. In contrast to Plaintiff's warranty claim based on inadequate warnings, Plaintiff's negligence claim for inadequate warnings is governed by N.C. Gen. Stat. § 99B-5. N.C.G.S. §§ 99B-1.2, -5 (1999). Nevertheless, as with Plaintiff's claim in warranty, a negligence claim based on inadequate warnings requires Plaintiff to present substantial evidence the alleged inadequate warning proximately caused Plaintiff's injuries. N.C.G.S. § 99B-5(a) (1999).

chantability based on the manufacture of a defective product. Otherwise, the trial court's 7 March 2000 order is affirmed.

Affirmed in part, and reversed and remanded in part.

Judge McGEE concurs.

Judge CAMPBELL dissents.

CAMPBELL, Judge, dissenting.

I respectfully dissent from the holding in part I of the majority opinion regarding the implied warranty of merchantability because I believe plaintiff has not shown substantial evidence of the product's defect, and therefore cannot survive a motion for summary judgment.

A motion for summary judgment is proper where there is no genuine issue of material fact. *Johnson v. Trustees of Durham Tech. Cmty. Coll.*, 139 N.C. App. 676, 680, 535 S.E.2d 357, 361, *appeal dismissed and disc. review denied*, 353 N.C. 265, —— S.E.2d —— (2000). As the majority has stated, "[a]n issue is genuine where it is supported by substantial evidence." *Johnson*, 139 N.C. App. at 681, 535 S.E.2d at 361. In turn, substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and is more than a scintilla or a permissible inference.' " *In re Appeal by McCrary*, 112 N.C. App. 161, 168, 435 S.E.2d 359, 364 (1993 (quoting *Wiggins v. N.C. Dep't of Human Res.*, 105 N.C. App. 302, 306, 413 S.E.2d 3, 5 (1992)).

The majority holds that summary judgment in favor of defendant was improper because it finds there was substantial evidence that defendant breached the implied warranty of merchantability by manufacturing a defective product. In doing so, the majority relies heavily on *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 138 N.C. App. 70, 530 S.E.2d 321 (2000).

*Red Hill* involved a products liability claim resulting from an alleged defect in a flourescent light which started a fire that destroyed the Red Hill's greige manufacturing mill. The evidence tended to show that it was a defective ballast (which dissipates heat generated in the normal operation of the light), inside the flourescent light that had overheated, igniting some lint that was on top of the

light in the process. Red Hill sued the manufacturer of the ballast, MagneTek, Inc. (MagneTek), on a breach of warranty theory.

Summary judgment in favor of MagneTek was granted at the trial court level. However, this Court reversed that ruling after finding that Red Hill had produced substantial evidence of a genuine issue of material fact, and that therefore, summary judgment in favor of MagneTek was not proper.

The evidence provided by Red Hill tended to show that the Hickory Fire Marshall, the Hickory Fire Inspector, and two North Carolina State Bureau of Investigation agents had done a cause and origin investigation, and based on the fire pattern, had determined that the area of origin of the fire was a particular flourescent light fixture, that the light fixture was discolored on top, indicating a specific area of heating, and that this specific area was in the area where the ballast was located. The investigators excluded all other possible sources of the fire, including the mill's electrical and mechanical systems. In addition, an expert for Red Hill whose expertise was in electrical engineering, physics, and fire investigation, reviewed the fire scene and the light fixture. The expert came to the same conclusion as the investigators—that the ballast had malfunctioned and that it overheated causing the fire. Even after considering all other possible sources of the fire, the expert concluded that no other cause was reasonable. Furthermore, although Red Hill could not point to a specific defect, the light fixture in question had been put only to its ordinary use. Thus, the Court held that "in a products liability action, based on tort or warranty, a product defect may be inferred from evidence of the product's malfunction, if there is evidence the product had been put to its ordinary use." *Red Hill*, 138 N.C. App. at 76-77, 530 S.E.2d at 327.

*Red Hill*, however, is distinguishable from the facts of the case at hand. Here, there was no evidence that the batteries malfunctioned, in fact, every indication was that they operated properly by activating the safety "venting" mechanism when pressure began to build in the batteries. An expert for defendant testified that the batteries were designed to leak in order to prevent them from exploding under certain conditions, namely their improper use by: (1) recharging the batteries; (2) mixing old batteries with new batteries; or (3) putting a battery in backwards. They would also leak if there were gross contamination in a battery. The expert was then able to rule out the possibilities of gross contamination or mixing old and new batteries.

Further, as noted by the majority, there is no evidence that plaintiff recharged the battery. The only remaining possibilities then, are that (1) the plaintiff put the batteries in backwards, causing them to leak as they were designed to do for safety precautions, or (2) the batteries malfunctioned.

The majority contends that based on this evidence, and based on the plaintiff's assumption that he properly placed the batteries in the lantern,[7] that under our holding in Red Hill, plaintiff should be allowed to infer that the product was defective, and that this constitutes sufficient evidence to defeat the summary judgment motion.

I disagree with this reasoning. While it is true that "our courts have permitted an inference of a product defect upon a showing the product malfunctioned after the product had been put to ordinary use," *Red Hill*, 138 N.C. App. at 76, 530 S.E.2d at 326, the *only* evidence that the product malfunctioned instead of properly venting, is the plaintiff's *assumption* that he properly placed the batteries in the lantern. This does not, in my belief, constitute the "substantial evidence" which is necessary to defeat a motion for summary judgment. Nor did plaintiff present expert testimony or other evidence to indicate the product was defective.[8]

Because I do not find that plaintiff has presented substantial evidence of any defect in the product, I would uphold the trial court's ruling in favor of summary judgment for defendant.

---

7. Plaintiff in his deposition responded to questions from defendant's attorney as follows:

Mr. Raynor: Notice that you had all the batteries in the right way[?]

Plaintiff: I don't even think I really looked to notice, to say honestly.

Mr. Raynor: Just assume you'd done it right?

Plaintiff: Yeah, yeah, I've put so many batteries in and out of things over the years with raising kids and everything.

8. It should be noted that although plaintiff did present an expert witness (William Wayne Beaver) who gave testimony regarding the venting mechanism and who opined that the leaking might be caused by a manufacturing defect, the expert was not able to definitively state whether the batteries in question here were defective.

In fact as pointed out by the majority, Beaver testified that in his opinion "if it were shown that the venting mechanism had been initiated, it would be 'strong evidence' the batteries had functioned properly," and that "Beaver was unable to state whether the batteries contained any defects that may have caused the venting system to malfunction."