An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1439

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

PAULA K. GREGORY, Administratrix
of the Estate of DARRYL TYRONE
GREGORY, JR.,
 Plaintiff-Appellant,

v.

OLD REPUBLIC HOME PROTECTION
COMPANY, INC.
 Defendant-Appellee.

Forsyth County
No. 10 CVS 8267

Appeal by Plaintiff from judgment entered 24 May 2013 by Judge Stuart Albright in Superior Court, Forsyth County.  Heard in the Court of Appeals 12 August 2014.

> *Kennedy, Kennedy, Kennedy and Kennedy, LLP, by Harold L. Kennedy, III and Harvey L. Kennedy, for Plaintiff-Appellant.*

> *Moore & Van Allen PLLC, by Joshua D. Lanning and Melinda L. Vervais, for Defendant-Appellee.*

McGEE, Chief Judge.


## I. Synopsis

Paula K. Gregory ("Plaintiff"), the administratrix of the estate of Darryl Tyrone Gregory, Jr. ("Gregory"),  initiated this wrongful death action against Old Republic Home Protection

Company, Inc. ("Defendant"), following the 2008 carbon monoxide poisoning death of Gregory. Plaintiff has failed to properly preserve the issue of whether the trial court erred in violation of Rule 404(b) by admitting at trial certain convictions of Gregory. The trial court did not err in granting Defendant's motion for directed verdict on Plaintiff's UDTP claim. Plaintiff has failed to make a proper argument concerning the trial court's grant of directed verdict on Plaintiff's breach of implied warranty claim and, therefore, Plaintiff has abandoned this argument. We find no error.

## II. Facts

Willie McKinney ("McKinney") purchased a house at 2205 East Florida Street ("the house") in Greensboro in the summer of 2007 as an investment rental property. McKinney's real estate agent and property manager, Genevieve Herbin ("Herbin"), obtained a home warranty ("the warranty") for the house from Defendant at that same time. At trial, McKinney was asked the following question concerning the warranty: "Did you even know you had a policy before Ms. Herbin told you in the summer of 2008?" Defendant answered in the negative.

In June or July of 2008, Gregory began living in the house. However, Gregory's sister actually signed the lease on the house. Shortly after moving into the house, Gregory informed

McKinney that the air conditioning system was not working properly. McKinney, without involving Defendant, contacted a technician recommended by Herbin. At the time, McKinney was apparently still unaware that he had a home warranty with Defendant. The technician advised McKinney that both the air conditioning and the heating system might need to be repaired or replaced.

Herbin then informed McKinney of the warranty and Herbin contacted Defendant, who sent one of its independent contractors, Windham Heating and Air ("Windham Heating"), to inspect the heating system. Initially, in early November of 2008, a technician from Windham Heating diagnosed a cracked heat exchange in the furnace. Cracks in the heat exchange could have caused a dangerous release of carbon monoxide into the house. Subsequently, the owner of Windham Heating, Paul Edward Windham ("Windham"), examined the heating system at the house, and determined that the heat exchange was not cracked and, therefore, did not replace the heat exchange or the heater. Windham did not identify any other problem with the heating system. Subsequent analysis by experts for both Plaintiff and Defendant indicated that the heat exchange was leaking little, if any, carbon monoxide. Plaintiff's and Defendant's experts had slightly differing opinions concerning how the carbon

monoxide got into the house, but all were in agreement that the creation of negative pressure in the closet that contained the furnace caused carbon monoxide to be sucked down the exhaust pipe and into the house, rather than properly exhausting up and out of the house.

Gregory and Monique Carpenter were found in the house, having died of carbon monoxide poisoning, on 14 November 2008. Plaintiff filed her complaint against Defendant and Windham Heating on 15 November 2010, alleging, *inter alia*, negligence, punitive damages, Unfair and Deceptive Trade Practices ("UDTP"), and breach of implied warranty. The record is unclear as to how Plaintiff's claims against Windham and Windham Heating were concluded, but by the time the Order on Final Pre-Trial Conference was filed on 7 May 2013, Windham and Windham Heating were no longer named defendants.

Trial commenced on 6 May 2013 on Plaintiff's claims against Defendant of negligent retention, vicarious liability, breach of warranty, and UDTP. At the close of Plaintiff's evidence, Defendant moved for directed verdicts on all charges. The trial court granted Defendant's motions for directed verdict with respect to the UDTP claim and the breach of warranty claim, and denied Defendant's motions for directed verdict on Plaintiff's remaining claims.

The trial continued on the charges of negligent retention and vicarious liability. Following closing arguments, the trial court instructed the jury and presented it with three issues to decide: (1) "Was Darryl Tyrone Gregory Jr.'s death caused by the negligence of Paul Edgar Windham doing business as Windham Heating and Air Conditioning?" (2) "Was Darryl Tyrone Gregory Jr.'s death caused by the negligence of . . . Defendant in retaining Paul Edgar Windham doing business as Windham Heating and Air Conditioning?" (3) "What amount is the estate of Darryl Tyrone Gregory Jr. entitled to recover for wrongful death?" The jury answered "no" to the first issue, finding that Gregory's death was not caused by negligence on the part of Windham and, therefore, did not address the remaining issues. Plaintiff appeals.

### III. Issues

### A. Rule 404(b)

In Plaintiff's first argument, she contends the trial court erred by admitting part of Gregory's criminal record into evidence in violation of N.C. Gen. Stat. § 8C-1, Rule 404(b). We disagree.

Plaintiff's argument on appeal is that the trial court erred by allowing evidence at trial of some of Gregory's prior convictions in violation of Rule 404(b) of the North Carolina

Rules of Evidence, which prohibits admitting prior bad acts "to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2013). However, Plaintiff did not make this argument at trial.

At trial, Plaintiff moved *in limine* to exclude any evidence related to Gregory's prior criminal convictions, criminal charges, or criminal activity, pursuant to N.C. Gen. Stat. § 8C-1, Rule 609, "[i]mpeachment by evidence of conviction of crime[,]" and further argued that, even if the evidence was admissible pursuant to Rule 609, it should be excluded because its probative value was substantially outweighed by the danger of unfair prejudice under N.C. Gen. Stat. § 8C-1, Rule 403. Plaintiff later argued that the evidence should be excluded pursuant to Rule 608(b), which states: "Specific instances of conduct.--Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence." N.C. Gen. Stat. § 8C-1, Rule 608(b) (2013).

The trial court initially ruled: "With regard to criminal charges and criminal activity, [Plaintiff's] motion is allowed. [Defendant's] sole request, should it become relevant, would be criminal convictions?" Defendant agreed, and the trial court

deferred ruling on the admissibility of any criminal convictions of Gregory:

> I certainly understand the plaintiff's contention. However, I do believe the plaintiff can open the door to the testimony the plaintiff wants to keep out. So if the plaintiff opens the door, I will consider any evidence of the defendant, any convictions. Again, I can't give you an advisory opinion past what I've already said. I am taking it under advisement. The plaintiff is certainly entitled to prove, in fact, what type of person the decedent was, to prove what type of care and assistance and society and companionship and comfort. But if the plaintiff opens the door to that line of questioning, the defendant is going to be allowed to rebut the fact that he was a good person. If the plaintiff puts in evidence that he was a good person and that he did good things, I will consider it.
>
> It doesn't mean any convictions will be automatically admissible, however. It means it's under advisement, and I will consider it. Everybody is on notice that if you open the door to this testimony with regard to the type of person the decedent was, the door will be open.

Plaintiff put on evidence, including testimony from Gregory's children, and photographs of Gregory coaching his son's football team. Defendant then sought to admit certain criminal convictions Gregory had on his record. The trial court stated: "What I'm hearing . . . is -- it's not necessarily 404(b). It's offered to rebut the evidence that's been offered by [P]laintiff." Defendant responded: "That's correct." The

trial court then stated that from its "point of view it's a different analysis [than Rule 404(b)]." The trial court ruled:

> I am going to allow some of the criminal convictions in. I find that the plaintiff has opened the door, and I understand the plaintiff disagrees with the court's ruling. Nevertheless, I do find that the plaintiff has opened the door to the type of person they have put in issue in this case, the type of person Mr. Gregory is and was during the course of his life.
>
> And it appears that he has done many good things during the course of his life, including raising three beautiful children, being a good father, a good and fit parent for his children. That is certainly the inference as to the testimony that was brought forth, including the five-year-old that testified that he was a very good parent to his children.
>
> I'm specifically also looking at Plaintiff's Exhibits 25 and 29 in which they show Mr. Gregory as a football coach in the year of 2003, Plaintiff's Exhibit 25, and the year 2006 -- it's right on that photograph that was admitted into evidence -- showing that he was a coach, not only to his own child, but to many other children. And I believe some of the questions involved that he was a coach of young people in general, not limited to just his son. Again, it was an inference of the type of person. Obviously, the inference is that he was a good person, not only to his own children but to other people as well.
>
> I think the criminal convictions from 2004, one count of assault on a female, one count of assault with a deadly weapon, and a conviction from 2007, maintaining a dwelling place for storing narcotics and possession with intent to sell and deliver cocaine rebut the inference that he is a good person, and I think the defendant is going to be allowed to challenge that inference

because the plaintiff has opened the door.

They are also going to be allowed to challenge the inference that he's a fit and proper parent based on the arguments of the defendant. I considered Rule 403, and I am excluding all the [pre-2004] convictions based on Rule 403[.]

Nevertheless, with regard to these convictions from 2004 and 2007, especially in light of the evidence offered by the plaintiff in Plaintiff's 25 and 29, I find the probative value of those convictions are not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Again, he is allowed to rebut the inference that I have discussed.

Plaintiff excepted to the trial court's ruling, but without making any argument concerning Rule 404(b). Plaintiff requested a limiting instruction "that these convictions would be considered only on the issue of whether Mr. Gregory was a fit parent or a good parent, something like that." The trial court gave a limiting instruction in accord with what Plaintiff had requested.

The trial court instructed the jury that "[d]amages for Darryl Tyrone Gregory Jr.'s death also include fair compensation for the present monetary value of Mr. Gregory to his next of kin." Gregory's next of kin were his children. The trial court further instructed:

There is no fixed formula for determining the present monetary value of Mr. Gregory to his next of kin. You must determine what is fair compensation by applying logic and

> common sense to the evidence. You may consider the services, protection, care, and assistance of Mr. Gregory, whether voluntary or obligatory, to his next of kin. These words are to be given their ordinary meanings.
>
> You may consider the family and personal relationships between Mr. Gregory and his next of kin, and what you find to be the reasonable value of the loss to them of these things over the life expectancy of Mr. Gregory. You may also consider the society, companionship, comfort, guidance, kindly offices and advice of Mr. Gregory to his next of kin. These words are also to be given their ordinary meaning.

The trial court therefore ruled that, because Plaintiff had introduced evidence of Gregory's good character as a father, including specific instances such as coaching his son's football team, Plaintiff had "opened the door" and made character an issue for the jury to consider when valuing the loss of Gregory to his children.

Plaintiff did not challenge this basis for the trial court's ruling at trial and, therefore, has abandoned any such challenge. N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context" and must have "obtain[ed] a ruling upon the party's request, objection, or motion.").

The trial court did not base its ruling on Rule 404(b), and Plaintiff does not challenge the actual basis for the trial court's ruling on appeal. Plaintiff has therefore abandoned any such challenge, and we must affirm the ruling of the trial court. *State v. Hodges*, 195 N.C. App. 390, 396, 672 S.E.2d 724, 729 (2009) (the defendant abandoned argument pursuant to N.C.R. App. P. 28(b)(6) because the defendant did not make the argument in his brief).

Finally, Plaintiff contends in her brief that

> [o]nce the criminal convictions of the deceased were admitted into evidence, Plaintiff had no chance of prevailing in this action. The admission of drug offenses, including those dealing with cocaine, was highly prejudicial and created a substantial risk that the jury decided the case based on the deceased's character and not upon an objective determination of the facts[.]

Plaintiff then stated: "The trial court abused its discretion in not excluding evidence of [Gregory's] criminal convictions where the danger of unfair prejudice substantially outweighed any probative value." These conclusory statements, without any true argument or citation to authority, violate Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure, and subject this argument to dismissal. *Hodges*, 195 N.C. App. at 396, 672 S.E.2d at 729. Because it was Plaintiff's duty in the first instance to argue prejudice in her initial brief, it was improper for

Plaintiff to use her reply brief as a means of introducing some evidence related to prejudice. N.C.R. App. P. 28 (2013); *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 707-08, 682 S.E.2d 726, 740 (2009) (citations omitted) (this Court "'will not entertain what amounts to a new argument presented in th[e] reply brief'").

Plaintiff fails in her burden of showing that the trial court abused its discretion in ruling that the contested evidence was admissible under Rule 403, and that she was materially prejudiced thereby. *State v. Stevenson*, 169 N.C. App. 797, 800-01, 611 S.E.2d 206, 209 (2005) (the ruling on Rule 403 "is within the sound discretion of the trial court, whose ruling will be reversed on appeal only when it is shown that the ruling was so arbitrary that it could not have resulted from a reasoned decision").

Importantly, Gregory's prior convictions were only introduced into evidence for the purpose of assisting the jury in determining damages, assuming the jury reached the issue of damages. The trial court instructed the jury that the convictions were not to be considered for any other purpose. "This Court presumes that jurors follow the trial court's instructions." *State v. Cummings*, 352 N.C. 600, 623, 536 S.E.2d 36, 53 (2000) (citations omitted). Because the jury found that

Gregory's death was not caused by negligence on the part of Windham, it did not reach the issue of Defendant's alleged negligent hiring or retention of Windham, and did not reach the issue of damages. This argument is without merit.

### B. Unfair or Deceptive Trade Practices

In Plaintiff's second argument, she contends that the trial court erred in directing verdict in favor of Defendant on Plaintiff's claim for unfair and deceptive trade practices. We disagree.

Even assuming *arguendo* the trial court erred in directing verdict for Defendant on Plaintiff's UDTP claim, Plaintiff cannot show prejudice pursuant to N.C. Gen. Stat. § 1A-1, Rule 61, which states:

> No error . . . or defect in any ruling or order . . . is ground[s] for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action amounts to the denial of a substantial right.

N.C. Gen. Stat. § 1A-1, Rule 61 (2013). In order to prove UDTP, Plaintiff had to prove, *inter alia*, that Plaintiff "'suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.'" *McLamb v. T.P., Inc.*, 173 N.C. App. 586, 593-54, 619 S.E.2d 577, 582 (2005) (citations omitted). On these facts, Plaintiff had to prove, *inter alia*,

that Defendant misrepresented Windham's qualifications by withholding vital information from McKinney, and that this misrepresentation proximately caused the death of Gregory. However, the jury found that Gregory's death was not "caused by the negligence of Paul Edgar Windham doing business as Windham Heating and Air Conditioning[.]" This determination necessarily breaks the chain of proximate cause Plaintiff was required to prove in order to prevail in her UDTP claim. Absent any proximate cause linking Defendant's alleged misrepresentations and Gregory's death, Plaintiff's UDTP claim could not survive. Because Plaintiff could not have prevailed on her UDTP claim, Plaintiff cannot show prejudicial error. This argument is without merit. *See McKay v. Parham*, 63 N.C. App. 349, 353, 304 S.E.2d 784, 787 (1983).

### *C. Breach of Implied Warranty*

In Plaintiff's final argument, she contends the trial court erred in granting directed verdict in favor of Defendant on Plaintiff's breach of implied warranty claim. We disagree.

> "The function of all briefs required or permitted by [the Appellate R]ules is to define clearly the issues presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon." N.C.R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the several briefs."). "It is not the duty of this Court to supplement an

> appellant's brief with legal authority or arguments not contained therein." *[S]ee also Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 ("It is not the role of the appellate courts . . . to create an appeal for an appellant.") (2005).

*Eaton v. Campbell*, __ N.C. App. __, __, 725 S.E.2d 893, 894 (2012) (citations omitted).

In this appeal, Plaintiff makes factual and legal arguments without providing any citation to authority in support of those arguments. Plaintiff does cite, absent pinpoint citations, two opinions at the end of her one-and-a-quarter page argument, as support for her claim that "Plaintiff clearly had a viable claim for breach of implied warranty." However, both those opinions, though containing general law related to breach of implied warranty, do not support Plaintiff's argument. *Jackson v. Housing Authority of High Point*, 73 N.C. App. 363, 326 S.E.2d 295 (1985), concerned an implied warranty of habitability claim. An implied warranty of habitability "stands for the proposition that a landlord impliedly warrants to his tenant that leased or rented residential premises are fit for human habitation, at least to the extent of being free from observable conditions that render the premises unsafe or unsanitary." *Id*. at 372, 326 S.E.2d at 300 (citations omitted). Plaintiff is not making an implied warranty of habitability claim against Gregory's landlord in the present case.

*DeWitt v. Eveready Battery Co.*, 144 N.C. App. 143, 550 S.E.2d 511 (2001), is a products liability case. *DeWitt* does include a claim for breach of an implied warranty, but it is for breach of an implied warranty of merchantability. *Id.* at 149, 550 S.E.2d at 515. Plaintiff fails to make a proper appellate argument and further fails to cite to any authority that supports her contention that the trial court erred in granting Defendant a directed verdict on Plaintiff's breach of implied warranty claim. *Eaton*, __ N.C. App. at, __, 725 S.E.2d at 894. This argument is without merit.

No error.

Judges BRYANT and STROUD concur.

Report per Rule 30(e).