TERESA P. WILLIAMS, LINDA BARRIGER, GALE SHARPE, EDEE EARP, PAT LITTLE, JEAN REID, MARTHA CONRAD, GLEENIE SETZER, KAY WHITE, CAROLYN GILREATH, & THE NORTH CAROLINA ASSOCIATION OF EDUCATORS, PLAINTIFFS, v. ALEXANDER COUNTY BOARD OF EDUCATION, DEFENDANT

No. COA97-600

(Filed 17 February 1998)

**Schools § 147 (NCI4th)— teachers—career development—programs changed—salary protection**

The trial court erred by granting defendant's motion for summary judgment in a class action brought by teachers employed by defendant Alexander County who had obtained career status under the Career Development Pilot Program but who alleged that the Board failed to comply with the statutory mandate and pay the salary, bonus and supplements to which they were entitled when the General Assembly discontinued the CDPP and put into place a new career development program. The statutes without doubt enunciate the intent of the General Assembly to create

WILLIAMS v. ALEXANDER COUNTY BD. OF EDUC.

[128 N.C. App. 599 (1998)]

statutory protection for teachers who qualified under the CDPP from any reduction in monthly salary caused solely by discontinuation of the original program.

Appeal by plaintiffs from order filed 3 March 1997 by Judge H. W. Zimmerman, Jr. in Alexander County Superior Court. Heard in the Court of Appeals 14 January 1998.

*Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., by John W. Gresham, for plaintiffs-appellants.*

*Joel C. Harbinson for defendant-appellee.*

JOHN, Judge.

Plaintiffs appeal the trial court's grant of summary judgment in favor of defendant Alexander County Board of Education (the Board). We reverse the order of the trial court.

Pertinent facts and procedural information include the following: The Alexander County School System (the System) was one of sixteen public school systems selected in 1985 by the General Assembly to participate in the Career Development Pilot Program (CDPP). *See* N.C.G.S. §§ 115C-363 - 115C-363.11 (1991). Deeming it "essential to attract and retain the best people in teaching and in school administration," the General Assembly enacted the CDPP, expressing therein the policy of "provid[ing] an adequate base salary for and encourag[ing] differentiation of all teachers and school administrators." G.S. § 115C-363. To that end, teachers attaining "career level" status as defined in the section and who accepted duties for career status teachers were to earn additional pay and bonuses. G.S. § 115C-363.11. In the event the CDPP was subsequently discontinued, the statute provided that

> any employee who has received a salary increment pursuant to the Career Development Plan shall continue to be paid the salary increment; however, the employee shall not receive any additional State annual increments, cost-of-living increments, or other salary increments unless the employee's salary would otherwise be less than the salary applicable to him on the State base salary schedule.

G.S. § 115C-363.11(c).

In 1989, the CDPP was in fact discontinued by the General Assembly, which established in its place a "site-based" permanent

career development program under the "School Improvement and Accountability Act of 1989" (the Act). 1989 N.C. Sess. Laws ch. 778 (later codified in Chapter 115C of the General Statutes). The new program, denominated the "Performance-based Accountability Program," shifted the implementation focus to individual schools and school districts and authorized the respective local school systems to develop their own differentiated pay plans, while retaining the option to continue use of the CDPP. *See* N.C.G.S. § 115C-238.4(a) (1991). During the 1990-91 school year, the System continued utilization of the CDPP.

Subsequent modifications of the Act dealt with the transitional period for counties moving from the original CDPP towards their own plan. Pertinent to the case *sub judice*, for example, 1989 Sess. Laws ch. 778, § 7, entitled "Existing Career Development and Lead Teacher Pilot Programs," was amended to provide:

> No provision of this section shall be construed to allow a local school administrative unit to pay any teacher, in salary and State-funded bonus or supplement, less than it paid that teacher on a monthly basis during the prior school year, so long as the teacher qualifies for a bonus or supplement under the local differentiated pay plan.

1989 N.C. Sess. Laws (Reg. Sess., 1990) ch. 1066, § 97(g) ("§ 97(g)").

In 1992, the General Assembly again addressed incentive and bonus pay for educators in an enactment requiring that

> [a]ll local school administrative units, including career ladder pilot units . . . adopt new differentiated pay plans for the 1993-94 school year, in accordance with the School Improvement and Accountability Act of 1989.

1991 N.C. Sess. Laws (Reg. Sess., 1992) ch. 900, § 71(d). Further,

> [w]ith regard to the amount of State funds appropriated in subsequent fiscal years for local school administrative units that were career ladder pilot units, it is the intent of the General Assembly that any reductions in appropriations not result in teachers receiving less, in salary and State-funded bonus, than they received on a monthly basis during the prior fiscal year so long as the teachers qualify for bonuses under the local differentiated pay plan.

1991 Sess. Laws. (Reg. Sess., 1992) ch. 900, § 71(e) ("§ 71(e)").

Plaintiffs, currently or previously employed by the Board, initiated the instant suit as a class action "on behalf of all teachers who were employed by the Defendant in the school years 1990-91 through 1993-94 who had previously attained a 'career status' under the career development program." Plaintiffs in the main alleged the Board

> failed to comply with the statutory mandate, and in so doing, . . . failed to pay the individual plaintiffs and the members of the class the salary, bonus and supplements to which they were entitled.

Defendant Board's subsequent summary judgment motion was granted in an order filed 3 March 1997. Plaintiffs timely appealed.

Summary judgment is properly entered when the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate the absence of any genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56 (1990); *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). The facts as alleged in the verified complaint are not in dispute, and the sole issue before us is interpretation of the law applicable thereto.

The Board contends the "hold harmless" provisions of G.S. § 115C-363.11(c) and § 71(e) do not independently guarantee the previously received level of income to teachers who qualified under the CDPP. In lieu of a formal brief, the Board has submitted and relies solely upon two documents purporting to interpret G.S. § 115C-363.11(c) and § 71(e) as not providing protection against reduction in monthly pay to educators who participated in the CDPP: (1) a written memorandum dated 25 March 1994 from Robert D. Boyd on behalf of the North Carolina School Boards Association (NCSBA) to Robert Austin, Superintendent of the System and (2) an advisory opinion dated 27 June 1994 from the Office of the Attorney General directed to the Superintendent of the System.

Preliminarily, we note that while opinions of the Attorney General are entitled to "respectful consideration," such opinions are not compelling authority. *Hannah v. Commissioners*, 176 N.C. 395, 396, 97 S.E. 160, 161 (1918). In the current instance, moreover, neither the opinion of the Attorney General nor the NCSBA letter references § 97(g) and the applicability of these documents to our analysis is therefore limited.

Indeed, critical to our decision is the relationship of § 97(g) to § 71(e), which replaced G.S. § 115C-363.11(c). Plaintiffs assert that the sections are to be construed *in pari materia* because § 97(g) and § 71(e) address the identical subject matter. We agree.

It is well settled that statutes dealing with the same subject matter must be construed *in pari materia*, "as together constituting one law." *Williams v. Williams*, 299 N.C. 174, 180-81, 261 S.E.2d 849, 854 (1980). Both sections at issue herein concern continuation of incentive pay to teachers who qualified under the CDPP. It is therefore our duty to harmonize them so as to give effect to each. *Id.* at 181, 261 S.E.2d at 854.

Statutory interpretation presents a question of law. *McLeod v. Nationwide Mutual Ins. Co.*, 115 N.C. App. 283, 288, 444 S.E.2d 487, 490, *disc. review denied*, 337 N.C. 694, 448 S.E.2d 528 (1994). The cardinal principle in the process is to ensure accomplishment of legislative intent. *Id.* To achieve this end, the court should consider "the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish." *Hayes v. Fowler*, 123 N.C. App. 400, 404-05, 473 S.E.2d 442, 445 (1996) (citation omitted). In ascertaining the intent of the legislature, the presumption is that it acted with full knowledge of prior and existing laws. *Investors, Inc. v. Berry*, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977).

We begin by considering the intent of the General Assembly in enacting the CDPP. The "obvious intent" of G.S. § 115C-363.11(c), as conceded in the Attorney General's opinion relied upon by the Board, was

> to provide an incentive to teachers to participate in this pilot program by assuring them that discontinuation of the pilot program would not result in the loss of the enhanced pay they had earned by achieving Career I or Career II status.

In each of the statutes passed subsequent to the CDPP, the intent of the General Assembly is readily discerned by examination of the unambiguous language contained therein. Section 97(g) provides a clear imperative:

> No provision of this section shall be construed to allow a local school administrative unit to pay any teacher . . . less than it paid that teacher on a monthly basis during the prior school year, so long as the teacher qualifies . . . .

Section 71(e) likewise leaves no question as to the intent of the General Assembly with regard to local school administrative units previously designated as career ladder pilot units:

[I]t is the intent of the General Assembly that any reductions in appropriations not result in teachers receiving less . . . than they received on a monthly basis during the prior fiscal year so long as the teachers qualify . . . .

The statutes without doubt enunciate the intent of the General Assembly in enacting § 71(e) and § 97(g) to create statutory protection for teachers who qualified under the CDPP, "the best people in teaching and in school administration," G.S. § 115C-363, from any reduction in monthly salary caused solely by discontinuation of the original 1985 program. As plaintiffs properly maintain, the statutory language is "unambiguous, direct, imperative and mandatory." Accordingly, the trial court's order in granting defendant Board's motion for summary judgment was error and is therefore reversed.

Reversed.

Judges GREENE and MARTIN, Mark D., concur.