DIXIE LUMBER COMPANY OF CHERRYVILLE, INC., Petitioner v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES, DIVISION OF ENVIRONMENTAL MANAGEMENT, Respondent

No. COA01-739

(Filed 7 May 2002)

**1. Environmental Law— judicial review of final agency decision—commercial underground petroleum tanks—operator**

The trial court did not err by affirming defendant Department of Environment, Health, and Natural Resources's final agency decision denying plaintiff company a reimbursement from the

DIXIE LUMBER CO. OF CHERRYVILLE v. N.C. DEP'T OF ENV'T, HEALTH & NAT. RES.

[150 N.C. App. 144 (2002)]

Commercial Leaking Petroleum Underground Storage Tank Cleanup Fund under N.C.G.S. § 143-215.94B for cleanup costs incurred by releases from two underground petroleum storage tanks on plaintiff's property, and the whole record test reveals that the final agency decision deeming plaintiff to be the operator of the commercial underground petroleum tanks under N.C.G.S. § 143-215.94A was supported by substantial, competent, and material evidence, and was not arbitrary and capricious.

2. **Environmental Law— judicial review of final agency decision—commercial underground petroleum tanks—operator's failure to pay fees**

A de novo review reveals that the trial court did not err by concluding that defendant Department of Environment, Health, and Natural Resources did not exceed its statutory authority or jurisdiction, or commit an error of law in denying plaintiff company reimbursement from the Commercial Leaking Petroleum Underground Storage Tank Cleanup Fund under N.C.G.S. § 143-215.94B for cleanup costs incurred by releases from two underground petroleum storage tanks on plaintiff's property based on plaintiff's failure to pay fees assessed against operators of commercial underground petroleum tanks, because: (1) the Environment Management Commission is specifically authorized under N.C.G.S. § 143-215.3(a)(17) to adopt rules to implement Part 2A of Article 21A of Chapter 143; (2) the Environment Management Commission was empowered to adopt N.C. Admin. Code tit. 15A, r. 2P.0401(b) in an effort to implement N.C.G.S. § 143-215.94A et seq.; and (3) plaintiff's argument that the rule conditioning eligibility for reimbursement from the Commercial Fund upon the payment of fees prior to the discovery of the release conflicts with N.C.G.S. § 143-215.94E(g)(3) is wholly without merit.

Appeal by petitioner from order entered 28 March 2001 by Judge Sanford L. Steelman, Jr., in Superior Court, Gaston County. Heard in the Court of Appeals 17 April 2002.

*Moore & Van Allen PLLC, by Peter J. McGrath, Jr., for the petitioner.*

*Attorney General Roy Cooper, by Assistant Attorney General Kimberly W. Duffley, for the respondent.*

DIXIE LUMBER CO. OF CHERRYVILLE v. N.C. DEP'T OF ENV'T, HEALTH & NAT. RES.

[150 N.C. App. 144 (2002)]

WYNN, Judge.

Dixie Lumber Company of Cherryville, Inc. appeals the trial court's affirmance of the Final Agency Decision of the North Carolina Department of Environment and Natural Resources ("Environmental Department") denying reimbursement from the Commercial Leaking Petroleum Underground Storage Tank Cleanup Fund, N.C. Gen. Stat. § 143-215.94B (1999) ("Commercial Fund"). We affirm.

In March 1998, Dixie Lumber sought reimbursement from the Commercial Fund for cleanup costs incurred by releases from two underground petroleum storage tanks on Dixie Lumber's property. The Environmental Department denied reimbursement upon concluding that Dixie Lumber was the operator of the tanks, and had failed to pay fees assessed against operators.

Judge Beryl E. Wade, Office of Administrative Hearings, conducted a contested case hearing on 10 February 2000. Judge Wade concluded Dixie Lumber was the operator of the tanks with unpaid fees, and recommended denial of Dixie Lumber's claim for reimbursement by the Final Agency. The Final Agency Decision adopted Judge Wade's Recommended Decision with additional findings of fact and conclusions of law. On judicial review, Superior Court Judge Sanford L. Steelman, Jr. affirmed the Final Agency Decision. Dixie Lumber appeals.

---

[1] Dixie Lumber first argues that the trial court erred in concluding that the findings of fact and conclusions of law in the Final Agency Decision were supported by substantial, competent and material evidence in the record, and in concluding that the Final Agency Decision was not arbitrary or capricious. We disagree.

In reviewing an appeal from a trial court's order affirming an agency's final decision, this Court must "(1) determine the appropriate standard of review and, when applicable, (2) determine whether the trial court properly applied this standard." *In re Appeal by McCrary*, 112 N.C. App. 161, 166, 435 S.E.2d 359, 363 (1993). The proper standard of review for the trial court to apply "in reviewing an agency decision depends upon the nature of the alleged error." *Id.* Where an appellant alleges the agency's decision was affected by errors of law, "*de novo*" review is required; however, where an appellant questions whether the agency's decision was supported by substantial evidence or was arbitrary or capricious, the trial court must employ the "whole record" test. *Walker v. N.C. Dept. of Human*

DIXIE LUMBER CO. OF CHERRYVILLE v. N.C. DEP'T OF ENV'T, HEALTH & NAT. RES.

[150 N.C. App. 144 (2002)]

*Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991); *see also* N.C. Gen. Stat. §§ 150B-51(b)(4)-(6) (1999).

In the case at bar, Dixie Lumber alleged in its petition for judicial review that the Final Agency Decision prejudiced its substantial rights as follows: (1) The conclusion in the Final Agency Decision "that [Dixie Lumber] was not eligible for reimbursement because tank fees were not paid and [Dixie Lumber] was the operator of the [underground storage tanks] is unsupported by substantial evidence admissible under N.C. Gen. Stat. § 150B-29(a), -30 or -31, in view of the entire record as submitted, or is arbitrary and capricious"; and (2) The conclusion of law that "The Environmental Management Commission acted within the authority provided by N.C.G.S. § 143B-282(a)(2)(h) in adopting rules in subchapter 2P of Title 15A, including 15A. N.C.A.C. 2P0401(b)" is an error of law. Dixie Lumber does not argue on appeal that the trial court applied the incorrect standards of review in considering Dixie Lumber's arguments, and we conclude that the trial court applied the correct standards of review to Dixie Lumber's challenges to the Final Agency Decision. Our review is therefore limited to determining whether the trial court properly applied the "whole record" and "*de novo*" standards of review to Dixie Lumber's respective arguments.

The trial court states in the findings of fact in its order that, "after applying the whole record test, the Court finds that the Final Agency Decision of the Department of Environment and Natural Resources is supported by substantial, competent and material evidence." Furthermore, the trial court found that "[t]he Final Agency Decision was not arbitrary or capricious." The whole record test requires examination of the entire record to determine whether the agency decision is supported by substantial evidence. *See ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977). "If substantial evidence supports an agency's decision after the entire record has been reviewed, the decision must be upheld." *Blalock v. N.C. Dep't of Health and Human Servs.*, 143 N.C. App. 470, 473-74, 546 S.E.2d 177, 181 (2001).

As Dixie Lumber acknowledges in its brief, the central legal issue in this appeal is whether Dixie Lumber was properly deemed to be the

DIXIE LUMBER CO. OF CHERRYVILLE v. N.C. DEP'T OF ENV'T, HEALTH & NAT. RES.

[150 N.C. App. 144 (2002)]

"operator" of the tanks under N.C. Gen. Stat. § 143-215.94A (1999). We note that Dixie Lumber did not specifically except to any of the Final Agency Decision's findings of fact before the trial court; thus, the findings of fact in the Final Agency Decision were binding on the trial court and constituted the whole record before it. *See Wiggins v. N.C. Dept. of Human Resources*, 105 N.C. App. 302, 413 S.E.2d 3 (1992). Therefore, "the trial court had to determine whether those findings reflected substantial evidence to support" the Final Agency Decision finding Dixie Lumber to be the operator. *Id.* at 306, 413 S.E.2d at 5.

G.S. § 143-215.94A(8) defines "operator" as "any person in control of, or having responsibility for, the operation of an underground storage tank." After reviewing the record, we conclude that it contains substantial evidence to support the Final Agency Decision that Dixie Lumber was the "operator" of the tanks. Indeed, testimony before Judge Wade indicated that an underground storage tank form on file with the Environmental Department listed Larry Summer, an officer of Dixie Lumber, as the contact person at the tanks' site, indicating a relationship between Dixie Lumber and the tanks. Furthermore, the contact person listed on the form usually indicates the tanks' operator. Evidence before Judge Wade indicated that Dixie Lumber used the two tanks for its business until discontinuing its relationship with its petroleum supplier, McNeely Oil Company. The Final Agency Decision's unchallenged findings reflect that only Dixie Lumber's employees used the tanks; Dixie Lumber's employees maintained the tanks, locking them up nightly; and purchased and installed the second tank in the 1970s. While there may be conflicting evidence in the record, the "whole record" test "does not allow the reviewing court to replace the agency's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Mendenhall v. N.C. Dept. of Human Resources*, 119 N.C. App. 644, 650, 459 S.E.2d 820, 824 (1995). We hold Dixie Lumber's first two assignments of error to be without merit.

[2] Dixie Lumber next argues that the trial court erred in concluding that the Environmental Department did not exceed its statutory authority or jurisdiction, or commit an error of law in denying Dixie Lumber reimbursement from the Commercial Fund. We disagree.

As Dixie Lumber alleged an error of law, "*de novo*" review was required; we note that the trial court applied "*de novo*" review to this

DIXIE LUMBER CO. OF CHERRYVILLE v. N.C. DEP'T OF ENV'T, HEALTH & NAT. RES.

[150 N.C. App. 144 (2002)]

argument. We must therefore determine whether the trial court did so properly. *See In re McCrary.*

G.S. § 143-215.94B establishes the Commercial Fund and defines the parameters for the disbursement of funds therein. N.C. Gen. Stat. § 143-215.94C(a) (1999) provides that an:

> operator of a commercial petroleum underground storage tank shall pay to the [North Carolina] Secretary [of Environment and Natural Resources] for deposit into the Commercial Fund an annual operating fee according to the following schedule:
>
> > (1) For each petroleum commercial underground storage tank of 3,500 gallons or less capacity—two hundred dollars ($200.00).
> >
> > (2) For each petroleum commercial underground storage tank of more than 3,500 gallon capacity—three hundred dollars ($300.00).

Additionally, N.C. Gen. Stat. § 143-215.94E (1999) delineates the rights and obligations of operators, providing in relevant part that:

> (g) No . . . operator shall be reimbursed pursuant to this section, and the [Environmental] Department shall seek reimbursement of the appropriate fund or of the [Environmental] Department for any monies disbursed from the appropriate fund or expended by the [Environmental] Department if:
>
> . . .
>
> > (3) The . . . operator has failed to pay any annual tank operating fee due pursuant to G.S 143-215.94C.

G.S. § 143-215.94E(g). Dixie Lumber does not contest that past annual tank operating fees were due at the time of discovery of the releases from the tanks. Rather, Dixie Lumber argues that G.S. § 143-215.94E(g)(3) does not impose a time restriction for fee payments, and appears to allow for the "back" payment of fees following the discovery of a release, so long as the fees are paid prior to reimbursement from the Commercial Fund. However, N.C. Admin. Code tit. 15A, r. 2P.0401(b) (September 2001) provides that:

> An . . . operator of a commercial underground storage tank is not eligible for reimbursement for costs related to releases if any annual operating fees due have not been paid in accordance with [N.C. Admin. Code tit. 15A, r. 2P.0301 (2000)] *prior to discovery.*"

(Emphasis added.) Dixie Lumber contends that this rule conditioning eligibility for reimbursement from the Commercial Fund upon the payment of fees prior to the discovery of the release conflicts with G.S. § 143-215.94E(g)(3) and is therefore invalid. We disagree.

The North Carolina Environmental Management Commission is the agency charged with enforcing the "Oil Pollution and Hazardous Substances Control Act of 1978," set forth in Article 21A of Chapter 143 of our General Statutes, including Part 2A thereof, "Leaking Petroleum Underground Storage Tank Cleanup." *See* G.S. § 143-215.94A *et seq.; see also* N.C. Gen. Stat. §§ 143-215.77(2) and 143-215.79 (1999); *Carpenter v. Brewer Hendley Oil Co.,* 145 N.C. App. 493, 549 S.E.2d 886 (2001). The Environmental Management Commission is specifically authorized under N.C. Gen. Stat. § 143-215.3(a)(17) (1999) to "adopt rules to implement Part 2A of Article 21A of Chapter 143." *See also* N.C. Gen. Stat. §§ 143B-282(a)(2)(h) and (i) (1999). We conclude that the Environmental Management Commission was empowered to adopt N.C. Admin. Code tit. 15A, r. 2P.0401(b) in an effort to implement G.S. § 143-215.94A *et seq.;* furthermore, Dixie Lumber's argument that the rule conflicts with G.S. § 143-215.94E(g)(3) is wholly without merit.

Accordingly, the trial court's 28 March 2001 order affirming the 7 November 2000 Final Agency Decision is,

Affirmed.

Judges McCULLOUGH and THOMAS concur.