MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

MW CLEARING & GRADING, INC., Petitioner v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, DIVISION OF AIR QUALITY, Respondent

No. COA04-852

(Filed 5 July 2005)

## 1. Environmental Law— property boundaries on land— proper calibration of measuring wheel—open burning piles—whole record test

The trial court did not err by affirming the Environmental Management Commission's decision affirming the civil penalty and investigation costs against petitioner company for violation of the burning regulation while clearing a large parcel of land in Gaston County even though petitioner contends the agency did not provide sufficient evidence that the occupied structure and the open burning piles were on different pieces of property or that the measuring device was properly calibrated as required by 15A N.C.A.C. 2D .1903(2)(b)(B), because: (1) there is a presumption of regularity of official acts by public officials and petitioner failed to present evidence showing the burning piles were located on the same property as the nearby residence; (2) petitioner did present evidence regarding the accuracy of the measuring wheel through the testimony of the company president, respondent also presented evidence regarding the wheel's accuracy, and the trial court weighed the conflicting evidence using the whole record test; (3) if there is more than one reasonable interpretation of the evidence in the record and the agency has chosen one, the trial court may not replace the agency's interpretation with its own; (4) it is the agency's province to weigh the credibility of witnesses, and the trial court may not overrule the agency's determination as to the value of testimony and credibility of witnesses; and (5) although petitioner argued the agency's action was arbitrary and capricious based on the lack of substantial evidence regarding property boundaries or the accuracy of the measuring device, this argument is without merit since the Court of Appeals upheld the agency's interpretation of the evidence with respect to both of these claims.

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

**2. Environmental Law— application of controlling law— mandatory assessment factors—equal protection claim— de novo review**

Applying a de novo review, the trial court did not err by affirming the Environmental Management Commission's decision affirming the civil penalty and investigation costs against petitioner company for violation of the burning regulation while clearing a large parcel of land in Gaston County even though petitioner contends the agency misapplied the controlling law under N.C.G.S. § 143-215.114A(a)(1) by failing to require evidence of all elements of the violation, failing to correctly apply mandatory assessment factors, and finding multiple violations from a single incident, because: (1) even though the agency had previously counted multiple piles as a single violation where a single penalty was considered sufficient to effect future compliance, it is not irrational or illogical to count each pile as one violation; (2) each individual pile located within the 1,000 foot requirement does in fact violate the statute; (3) in light of petitioner's continued disregard for the regulations as evidenced by three prior violations, the agency properly exercised its discretion in counting each open burning pile as a separate violation; (4) in regard to petitioner's equal protection claim, no fundamental right is implicated by imposing a fine on petitioner for violation of a regulatory scheme, nor does petitioner fall within any suspect class, and the imposition of multiple fines for multiple open burning piles is rationally related to a legitimate government purpose; and (5) although petitioner contends the Court of Appeals should use a de novo review to overrule the agency's determination of the significance of the impact of petitioner's violations, the legislature has granted such discretion to the agency, the Court of Appeals may only review the agency's evaluation under the whole record test, and there was substantial evidence to support the agency's application of the mandatory assessment factors.

Judge JACKSON dissenting.

Appeal by petitioner from judgment entered 1 March 2004 by Judge Evelyn W. Hill in Wake County Superior Court. Heard in the Court of Appeals 21 March 2005.

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

*Knox, Brotherton, Knox & Godfrey, by Allen C. Brotherton and Kara F. McIvor, for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Elizabeth J. Weese, for respondent-appellee.*

MARTIN, Chief Judge.

Petitioner, MW Clearing and Grading, Inc., is a grading contractor with its office in Blacksburg, South Carolina. Petitioner is engaged in the business of clearing parcels of land by removing trees, vegetation, and other unwanted materials from above and below the ground's surface. These materials are then disposed of by either grinding or open burning. In November of 1999, petitioner cleared a large area of land in Cramerton, North Carolina in Gaston County. Tony McManus, an inspector for the North Carolina Department of Environment and Natural Resources (DENR), Division of Air Quality, respondent, was driving home from work on 4 November 1999 when he noticed several large columns of white smoke off of Highway 74. McManus stopped to investigate. When he arrived at the cleared site, he discovered several burning piles of land-clearing debris. Kenneth Wilson had been left in charge of the site that day by Richard Moorhead, petitioner's president. McManus discussed the open burning regulations with Wilson, including the requirement that "[t]he location of the burning [be] at least 1,000 feet from any dwelling, group of dwellings, or commercial or institutional establishment, or other occupied structure not located on the property on which the burning is conducted." 15A N.C.A.C. 2D .1903(2)(b)(B) (1999). Wilson said he was not familiar with the regulations, but he agreed to meet McManus the next day to measure the distance of the existing piles from the closest residence. McManus did not have a measuring device, and Wilson offered to bring the company's measuring wheel to the site with him the following day.

On 5 November 1999, using petitioner's measuring device, McManus counted nine open burning piles that were within one thousand feet of the nearest residence. The distances of these piles from the residence were 453 feet, 536 feet, 610 feet, 659 feet, 704 feet, 758 feet, 873 feet, 923 feet, and 990 feet. Prior to making these measurements, McManus had not calibrated or tested the accuracy of the measuring device. As a result of these violations, petitioner was assessed a civil penalty of $36,000: $4,000 for each of the nine piles, plus $365 for the investigation costs. Petitioner had previously violated the same open burning regulation on three sepa-

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

rate occasions, for which it was assessed civil penalties of $1,247.44, $1,341.56, and $2,842.00.

On 15 March 2000, petitioner filed a petition for a contested case hearing in the Administrative Office of Hearings. Petitioner contested the civil penalty assessment, claiming DENR (1) exceeded its authority or jurisdiction, (2) acted erroneously, (3) failed to use proper procedure, (4) acted arbitrarily or capriciously, and (5) failed to act as required by law or rule. *See* N.C. Gen. Stat. § 150B-51(b) (2003). The administrative law judge issued a recommended decision affirming the civil penalty and investigation costs, to which petitioner excepted. The Environmental Management Commission then issued a final agency decision adopting the recommended decision to affirm the penalty and costs. Petitioner sought judicial review of the agency decision in Wake County Superior Court, where the agency decision was affirmed. Petitioner appeals.

---

Upon appeal from an order of the superior court affirming an agency decision, "the appellate court must examine the trial court's order to determine first, whether the trial court exercised the appropriate standard of review, and secondly, whether the trial court properly applied that standard to the record before it." *Skinner v. N.C. Dep't of Corr.*, 154 N.C. App. 270, 273, 572 S.E.2d 184, 187 (2002). The proper standard of review in the superior court depends upon the nature of the alleged error. *Id.*; *Dixie Lumber Co. of Cherryville v. N.C. Dept. of Env't, Health, and Nat. Res.*, 150 N.C. App. 144, 146, 563 S.E.2d 212, 214, *disc. review denied*, 356 N.C. 161, 568 S.E.2d 192 (2002). When the petitioner alleges the agency decision was not supported by substantial evidence or was arbitrary and capricious, the proper standard is the "whole record" test. When the petitioner contends the agency made an error of law, the superior court is required to review the error *de novo*. *Skinner*, 154 N.C. App. at 273-74, 572 S.E.2d at 187; *Dixie Lumber*, 150 N.C. App. at 146, 563 S.E.2d at 214.

"The reviewing court may be required to utilize both standards of review if warranted by the nature of the issues raised." *R.J. Reynolds Tobacco Co. v. N.C. Dep't of Env't & Natural Res.*, 148 N.C. App. 610, 614, 560 S.E.2d 163, 166, *disc. review denied*, 355 N.C. 493, 564 S.E.2d 44 (2002). Here, petitioner presents two principal arguments on appeal. First, petitioner argues the trial court erred by affirming the agency's decision as it was not supported by substantial evidence and was arbitrary and capricious. Specifically, petitioner claims the

174          IN THE COURT OF APPEALS

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

agency did not provide sufficient evidence that the occupied structure and the open burning piles were on different pieces of property, as required by statute, or that the measuring device was properly calibrated. These arguments required the court to apply the whole record test. Second, petitioner argues the agency misapplied the controlling law by: (1) failing to require evidence of all elements of the violation, (2) failing to correctly apply mandatory assessment factors, and (3) finding multiple violations from a single incident. Therefore, petitioner contends the trial court incorrectly applied *de novo* review by affirming the agency's conclusions of law. In neither argument does petitioner allege the trial court applied an incorrect standard of review; therefore, our review is limited to whether the trial court properly applied each standard to petitioner's arguments.

In applying the whole record test, the reviewing court must examine the entire record to determine whether the agency decision was supported by substantial evidence. " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' 'If substantial evidence supports an agency's decision after the entire record has been reviewed, the decision must be upheld.' " *Dixie Lumber*, 150 N.C. App. at 147, 563 S.E.2d at 214 (citations omitted). The court must consider evidence that supports the agency's decision as well as evidence that contradicts it. *In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 923 (1979). However, if there is more than one reasonable interpretation of the evidence in the record, and the agency has chosen one, the reviewing court may not replace the agency's interpretation with its own. *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977). Nor may the reviewing court weigh the probative value of testimony. The agency may accept or reject in whole or part the testimony of any witness, and the agency's determination as to the value of testimony and the credibility of witnesses is final. *Little v. Board of Dental Examiners*, 64 N.C. App. 67, 69, 306 S.E.2d 534, 536 (1983).

[1] Petitioner argues the trial court incorrectly applied the whole record test because the agency decision was not supported by substantial evidence. According to petitioner, DENR failed to present evidence regarding the property boundaries on the land in question and failed to prove the measuring wheel was properly calibrated. Therefore, petitioner claims the evidence in the record did not show the burning piles were located on different property than the residence from which they were measured, nor did it show the distance of the piles from the residence had been accurately measured, two

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

essential elements of the statute. 15A N.C.A.C. 2D .1903(2)(b)(B) (1999). The burden is on petitioner, however, to prove DENR's non-compliance with the statute.

There is a presumption of regularity of official acts by public officials. This presumption

> is rebuttable by affirmative evidence of irregularity or failure to perform duty, but the burden of producing such evidence rests on him who asserts unlawful or irregular conduct. The presumption, however, prevails until it is overcome by . . . evidence to the contrary. . . [and] [e]very reasonable intendment will be made in support of the presumption.

*Huntley v. Potter*, 255 N.C. 619, 628, 122 S.E.2d 681, 687, (1961) (citations omitted). Petitioner claims this burden was not an affirmative duty but was met by simply showing the agency's evidence was insufficient. We disagree. The clear import of the presumption is to require petitioner to present substantial evidence that DENR failed to comply with the statute. *See In re Annexation Ordinance*, 304 N.C. 549, 551, 284 S.E.2d 470, 472 (1981); *Painter v. Board of Education*, 288 N.C. 165, 178, 217 S.E.2d 650, 658 (1975); *Civil Service Bd. v. Page*, 2 N.C. App. 34, 40, 162 S.E.2d 644, 647 (1968). Petitioner, however, presented no evidence showing the open burning piles were located on the same property as the nearby residence and therefore failed to rebut this element of the statute.

Petitioner did present evidence regarding the accuracy of the measuring wheel through the testimony of Richard Moorhead, the company president. Respondent also presented evidence regarding the wheel's accuracy, largely through the testimony of its inspector, Mr. McManus. The trial court weighed the conflicting evidence and made the following findings:

> 5. The record contains testimony of both Tony McManus, the field inspector for the Division of Air Quality and testimony of Richard D. Moorhead, owner of MW Clearing and Grading, Inc. Testimony at the hearing shows that the measuring wheel used by McManus to determine the distance the nine piles of burning debris were located from the nearest residence was provided by petitioner to respondent for the purpose of measuring the distances involved. Mr. McManus testified that there was no malfunctioning of the wheel apparent to him at the time the wheel was being used. Further testimony indicates that nei-

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

ther Mr. Wilson nor Mr. Richard M. Moorhead, agents of petitioner who were present at the time of the measurement, ever cautioned Mr. McManus about any malfunction involving their measuring wheel.

6. Mr. Richard D. Moorhead testified that he was aware of an error in the measurements when he first received the civil penalty assessment document in February, 2000. The administrative law judge's order for pre-hearing statements required petitioner to identify issues to be resolved at the hearing. Petitioner's pre-hearing statement dated 19 April 2000 did not identify any possible malfunctioning of the wheel or accuracy of measurements as an issue to be resolved. Nor did the order on final pretrial conference signed by counsel identify such an issue. Moreover, petitioner's initial response to the notice of violation indicated that the house had not even been seen.

7. Where there are two reasonably conflicting views as to whether the wheel actually malfunctioned, the whole record test does not allow the court to replace the administrative agency's judgment, even though it could justifiably have reached a different result had the matter been before the court *de novo*. While taking into account contradictory evidence from petitioner that the wheel had two bent pegs, there is substantial other evidence in the whole record to discredit that testimony and to support the agency's acceptance of the testimony of Mr. McManus (and inferences therefrom) that the wheel was not malfunctioning at the time he was using it. The credibility of witnesses and the probative value of particular testimony are for the administrative body to determine and it may accept or reject, in whole or in part, the testimony of any witness.

The trial court correctly stated the whole record test and properly applied the test to the evidence before it. The trial court noted, as we have above, that if there is more than one reasonable interpretation of the evidence in the record, and the agency has chosen one, the trial court may not replace the agency's interpretation with its own. *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 540 (1977). The final agency decision was a reasonable interpretation of the substantial evidence before it, and the trial court properly affirmed the agency's action.

We also stated that it is the agency's province to weigh the credibility of witnesses, and the trial court may not overrule the agency's

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

determination as to the value of testimony and credibility of witnesses. *Little v. Board of Dental Examiners*, 64 N.C. App. 67, 69, 306 S.E.2d 534, 536 (1983). Petitioner argues that the Environmental Management Commission made an improper inference of false testimony from petitioner's failure to disclose the inaccuracy of the measuring wheel prior to trial. The trial court, however, could not reconsider Mr. Moorhead's credibility or the value of his testimony, nor could it substitute its own interpretation of his testimony for the agency's. The trial court, therefore, properly upheld the agency's finding that such testimony failed to overcome the presumption of regularity of official acts.

Agency decisions have been found to be arbitrary and capricious when they "indicate a lack of fair and careful consideration; [or] when they fail to indicate 'any course of reasoning and the exercise of judgment.' " *Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 420, 269 S.E.2d 547, 573, *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980) (citation omitted). Petitioner argued the agency's action was arbitrary and capricious because of the lack of substantial evidence regarding property boundaries or the accuracy of the measuring device. Because we have upheld the agency's interpretation of the evidence with respect to both of these claims, we find this argument to be without merit.

[2] Petitioner's second argument is that the Environmental Management Commission's interpretation of the controlling statute was erroneous. Unlike the whole record test, the trial court is free to substitute its own judgment for that of the agency when reviewing questions of law *de novo*. However, "although courts are the final interpreters of statutory terms, 'the interpretation of a statute by an agency created to administer that statute is traditionally accorded some deference.' " *Best v. N.C. State Board of Dental Examiners*, 108 N.C. App. 158, 162, 423 S.E.2d 330, 332 (1992), *disc. review denied*, 333 N.C. 461, 428 S.E.2d 184 (1993) (quoting *Savings and Loan League v. Credit Union Comm.*, 302 N.C. 458, 466, 276 S.E.2d 404, 410 (1981)). The weight accorded to an agency's interpretation of a statute by the trial court " 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " *Savings and Loan League v. Credit Union Comm.*, 302 N.C. 458, 466, 276 S.E.2d 404, 410 (1981) (quoting *Skidmore v. Swift & Company*, 323 U.S. 134, 140, 89 L. Ed. 124, 129 (1944)).

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

The Legislature has conferred on the Environmental Management Commission the authority to set air quality standards and regulate pollution abatement efforts. N.C. Gen. Stat. § 143-211(c) (2003); N.C. Gen. Stat. § 143-215.107(a)(1),(3) (2003). Such authority includes the ability to enforce these standards and regulations through the imposition of civil penalties. N.C. Gen. Stat. § 143-215.114A (2003). The statute provides, in pertinent part,

(a) A civil penalty of not more than ten thousand dollars ($10,000) may be assessed by the Secretary against any person who:

(1) Violates any classification, standard or limitation established pursuant to G.S. 143-215.107 [Air quality standards].

N.C. Gen. Stat. § 143-215.114A(a)(1) (2003). Petitioner's primary objection to the Commission's interpretation of this statute is the imposition of separate penalties for each open burning pile.

Petitioner contends DENR "exceeded its discretion and authority" in interpreting each pile to be one violation because such an interpretation was an "overt avoidance of the $10,000 statutory limit." The statute, however, does not define what constitutes a violation. Even though the agency had previously counted multiple piles as a single violation where a single penalty was considered sufficient to effect future compliance, it is not irrational or illogical to count each pile as one violation. Each individual pile located within the 1,000 foot requirement does, in fact, violate the statute. Noting the deference given to an agency's interpretation of a statute, the trial court concluded:

12. Notwithstanding petitioner's allegation that respondent's treatment of this multiple pile violation is inconsistent with respondent's treatment of petitioner's previous multiple pile violations, the testimony reflects a consistent application of graduated penalties in which the amount of each penalty increases each time petitioner repeats the violation. Respondent may exercise its enforcement discretion, as it did in the preceding penalty assessments, by declining to enforce as to a particular burning pile where it is anticipated that a single penalty would be sufficient to obtain compliance. However, where repeated violations of the same nature continue to occur, it is not inconsistent for respondent to begin to enforce as to each separate pile in an effort to deter continued non-compliance.

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

In light of petitioner's continued disregard for the regulations as evidenced by three previous violations, we agree with the trial court that the agency properly exercised its discretion in counting each open burning pile as a separate violation. Although an agency's interpretation of a statute is not binding on the courts, it is afforded some deference, and we see no reason to fail to yield such deference here.

Petitioner also argues such an interpretation violated its rights to equal protection because (1) the evidence tended to show that no previous violators of this statute had incurred multiple penalties for multiple piles, and (2) the assessment of multiple penalties bore no rational relationship to the purpose of the statute because the same debris arranged in one large pile could only have incurred a maximum penalty of $10,000. We disagree.

A claim of equal protection requires a two-tiered scheme of analysis. The first tier requires the court to apply strict scrutiny where the petitioner is either placed in a suspect class or claims an infringement of a fundamental right. *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 10-11, 269 S.E.2d 142, 149 (1980). No fundamental right is implicated by imposing a fine on petitioner for violation of a regulatory scheme, nor does petitioner fall within any "suspect class." Although petitioner correctly states that a "class of one" may arise where an individual has been "intentionally treated differently from others similarly situated," *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 1063 (2000), petitioner does not constitute such a class.

Mr. McManus testified he was not aware of anyone else, in his ten years of experience, who had been cited for violating the same regulation four times. He could remember only one individual who had been issued as many as two notices of violations. Keith Overcash, deputy director for DENR's Division of Air Quality, also testified that most penalties assessed were rather light because many first-time violators were not aware of the regulations. Here, however, upon the admission of its president and as evidenced by three prior violations, petitioner was clearly aware of the regulations. The evidence before the trial court, therefore, indicated that petitioner was not, as argued, "similarly situated" to others subject to the same penalties, and we decline to find that petitioner was placed in a suspect class. Because the State's action neither affected a fundamental right nor implicated a suspect classification, we need not apply strict scrutiny to petitioner's claim.

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

We now consider whether the imposition of multiple fines under N.C. Gen. Stat. § 143-215.114A(a)(1) bears a rational relationship to a conceivable legitimate government purpose. *Texfi Industries*, 301 N.C. at 11, 269 S.E.2d at 149. According to N.C. Gen. Stat. § 143-211,

> Standards of water and air purity shall be designed to protect human health, to prevent injury to plant and animal life, to prevent damage to public and private property, to insure the continued enjoyment of the natural attractions of the State, to encourage expansion of employment opportunities, to provide a permanent foundation for healthy industrial development and to secure for the people of North Carolina, now and in the future, the beneficial uses of these great natural resources.

N.C. Gen. Stat. § 143-211(c) (2003). Petitioner argues that imposing multiple fines for multiple burning piles bears no rational relationship to this stated purpose. We disagree.

In determining the amount of a civil penalty for violating open burning regulations, the Division of Air Quality considers numerous assessment factors. One such factor is "the degree and extent of harm to the natural resources of the State, to the public health, or to private property resulting from the violation." N.C. Gen. Stat. § 143B-282.1(b)(1) (2003). The harm resulting from petitioner's violation was assessed as "significant." Another factor is "the effect . . . on air quality," which was also found to be "significant." N.C. Gen. Stat. § 143B-282.1(b)(3) (2003). The State's protection of the natural environment and the health of its citizens is a vital government function. Three prior penalties failed to deter petitioner from adhering to air quality regulations, and the Legislature granted DENR and the Environmental Management Commission the authority and discretion to prevent continuing violations by petitioner. We find the imposition of multiple fines for multiple open burning piles to be rationally related to a legitimate government purpose, and we find no merit in petitioner's claim that its right to equal protection of the laws has been violated.

Finally, petitioner argues that DENR incorrectly applied the statutory assessment factors in reaching the amount of the civil penalty. The Legislature granted the Environmental Management Commission quasi-judicial power to assess civil penalties for violations of environmental regulations. N.C. Gen. Stat. § 143B-282.1(a) (2003). In determining the amount of those penalties, the Commis-

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

sion considered the following factors under N.C. Gen. Stat. § 143B-282.1(b) and rated petitioner's violations accordingly:

(1) The degree and extent of harm to the natural resources of the State, to the public health, or to private property resulting from the violation;

*significant*

(2) The duration and gravity of the violation;

*·significant*

(3) The effect on ground or surface water quantity or quality or on air quality;

*significant*

(4) The cost of rectifying the damage;

*not significant*

(5) The amount of money saved by noncompliance;

*very significant*

(6) Whether the violation was committed willfully or intentionally;

*significant*

(7) The prior record of the violator in complying or failing to comply with programs over which the Environmental Management Commission has regulatory authority; and

*extremely significant*

(8) The cost to the State of the enforcement procedures.

*not significant*

N.C. Gen. Stat. § 143B-282.1(b) (2003). Our Supreme Court has previously held that "some discretion may be granted to agencies to ensure that they accomplish the purposes for which they were created, provided that such discretion is accompanied by adequate guiding standards." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 382, 379 S.E.2d 30, 35-36 (1989). In *Civil Penalty*, the following assessment factors were found to be adequate guiding standards for the agency to impose civil penalties in varying amounts within a statutory limit: "the degree and extent of harm caused by the violation, the cost

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

of rectifying the damage, the amount of money the violator saved by his noncompliance, whether the violation was committed willfully and the prior record of the violator in complying or failing to comply with this Article." *Id.* at 383, 379 S.E.2d at 36. These five factors are virtually identical to five of the factors in N.C. Gen. Stat. § 143B-282.1(b) above; therefore, we also hold these mandatory assessment factors to be sufficient to "check the exercise of [the agency's] discretion in its assessment of civil penalties in varying amounts, commensurate with the seriousness of the violations of the Act." *Id.* at 383, 379 S.E.2d at 36.

Petitioner argues that we, using *de novo* review, should overrule the agency's determination of the significance of the impact of petitioner's violations. However, the Legislature has granted such discretion to the agency. We cannot, as a matter of law, reevaluate the impact on the environment of petitioner's violations; we may only review the agency's evaluation under the whole record test. Upon careful consideration of the entire record before us, we conclude there was substantial evidence to support the agency's application of the mandatory assessment factors. This assignment of error is overruled.

We have reviewed each of petitioner's assignments of error and find each of them to be without merit. The Commission's final decision was supported by substantial evidence on the whole record as submitted, and therefore the decision was not arbitrary or capricious. Upon *de novo* review, the trial court correctly interpreted and applied the relevant law. The order from which petitioner appeals is affirmed.

Affirmed.

Judge HUDSON concurs.

Judge JACKSON dissents.

JACKSON, Judge dissenting.

For the reasons stated below, I must respectfully dissent from the majority's conclusion that Petitioner's violations constituted nine, rather than one, violations of North Carolina General Statutes section 143-215.114A.

I concur, however, with the majority's conclusion that Petitioner violated 15A North Carolina Administrative Code 2D.1900 and reluc-

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

tantly agree that the agency's use of the measuring wheel was acceptable, although I would caution regulatory agencies against the dangers of using another's equipment as the basis for their enforcement actions as became apparent in the instant case.

The majority cites—and dismisses—Petitioner's argument that the agency's decision exceeded its statutory authority. The majority correctly notes that an argument that an agency action was in excess of statutory authority is subject to *de novo* review. *North Carolina Department of Natural Resources v. Carroll*, 358 N.C. 649, 658, 599 S.E.2d 888, 894 (2004).

" '[W]e must expect the Legislature to legislate only so far as is reasonable and practical to do and we must leave to [the agency] the authority to accomplish the legislative purpose, guided of course by proper standards.' " *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 381-82, 379 S.E.2d 30, 35 (1989) (emphasis omitted) (quoting, *Com'r of Insurance v. Rate Bureau*, 300 N.C. 381, 402, 267 S.E.2d 547, 563 (1980)). It is well-settled that state agencies must employ "adequate guiding standards" which ensure that the agency's decision-making process is not arbitrary and that the agency is not called upon to make significant policy determinations appropriately left to other branches of government. *Adams v. Dept of N.E.R*, 295 N.C. 683, 697-98, 249 S.E. 2d 402, 411 (1978); *see In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 382, 379 S.E.2d 30, 35.

Petitioner was cited for nine violations of 15A North Carolina Administrative Code 2D.1900, "Open Burning," within 1,000 feet of occupied structures. North Carolina General Statutes section 215.114A specifically states that "[t]he Secretary may assess a civil penalty of not more than ten thousand dollars ($10,000) per day for a violation of the emissions limitations set out in G.S. 143-215.107D as provided in this subsection."

The company's previous history of compliance was as follows: on 16 September 1992 Notice of Violation was issued for open burning within 1,000 feet and a civil penalty of $1,247.44 was assessed and paid, on 21 March 1996 Notice of Violation was issued for open burning within 1,000 feet and a civil penalty of $1,341.56 was assessed and paid, and on 6 October 1997 Notice of Violation was issued for open burning within 1000 feet and a civil penalty of $2,842.00 was assessed and paid.

The initial notice of violation prepared by Tony L. McManus (McManus), an environmental specialist with the Mooresville

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

Division of Air Quality in the North Carolina Department of Environment and Natural Resources, on 5 November 1999 indicated that there was one, not nine, violations of 15A NCAC 2D.1900 in accordance with the agency's past practice of citing for multiple for violations.

In the "Enforcement Case Assessment Factors Report," a recommendation prepared by McManus, the "alleged violation" is described as "[t]he open burning of land clearing debris within 1,000 feet of an occupied residence by MW Clearing & Grading, Inc. located off of Highway 74/Wilkinson Boulevard . . . ." No mention is made that there were nine debris piles burning in this description of the alleged violation. Moreover, McManus sent a memorandum on 29 December 1999 to Mike Aldridge, supervisor of the enforcement group, regarding petitioner's violation. In the 29 December memorandum, with the subject of "Fast Track Enforcement," McManus identified the type and number of violations as "One violation of 15A NCAC 2D.1900, 'Open Burning.' " This citation of one violation of the administrative code was consistent with the agency's past practices as both McManus and Keith Overcash (Overcash), Deputy Director for the Division, testified at the administrative hearing.

Deputy Director Overcash, however, elected unilaterally to throw out the agency's past practices in assessing the penalty in this matter. Included in the evidence presented at the administrative hearing was a "Division of Air Quality—Civil Penalty Assessment" worksheet. The assessment factors were based upon provisions included in North Carolina General Statutes section 143B-282.1 and North Carolina Administrative Code 15A 2J.0006. These provisions are required considerations in each assessment according to Overcash. Accordingly, he completed a worksheet for every penalty the agency assessed for which he was responsible. For each factor, the alleged violation could be rated as not significant, moderately significant, significant, very significant, or extremely significant. Petitioner was rated as follows:

1) The degree and extent of harm to the natural resources of the State, to the public health, or to private property resulting from the violation;

   *significant*

2) The duration and gravity of the violation;

   *significant*

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

3) The effect on ground or surface water quantity or quality or on air quality;

*significant*

4) The cost of rectifying the damage;

*not significant*

5) The amount of money saved by noncompliance;

*very significant*

6) Whether the violation was committed willfully or intentionally [Cause];

*significant*

7) The prior record of the violator in complying of failing to comply with the programs over which the Environmental Management Commission has regulatory authority; and

*extremely significant*

8) Cost to the State of enforcement procedures.

*not significant*

9) The effectiveness of the action taken by the violator to cease the violation.

*not significant*

In addition to the assessment factors preprinted on the page, Overcash hand wrote in the following three items: "[p]reviously assessed (3 times) for same violation;" "[n]ine piles [within] 1000 f[ee]t of residence;" and "[r]esponse from violator indicated savings of [$]31,000 by open-burn vs. hauling." No credit was given to petitioner for the following "Remission Factors:"

Whether one or more of the civil penalty assessment factors were wrongly applied to the detriment of the petitioner;

Whether the violator promptly abated continuing environmental damage resulting from the violation;

Whether the violation was inadvertent or the result of an accident;

Whether the violator had been assessed civil penalties for any previous violations; and Whether payment of the civil penalty will prevent payment for the remaining necessary remedial actions.

MW CLEARING & GRADING, INC. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[171 N.C. App. 170 (2005)]

Overcash also testified that there was no Division policy on treating multiple piles as a single violation. He further stated that because of the financial savings petitioner would realize by burning rather than hauling away its debris, he "felt that we could count them as separate violations." Overcash also testified that the Division uses a "penalty tree" to ensure consistency between assessments from one to the next, but that basically it was for first and second time violators and after that, the decision to assess at a higher amount was solely in his discretion. There simply were no principled "adequate guiding standards" underlying Overcash's decision to deviate from the agency's historical practice of assessing one penalty for multiple piles, nor for failing to utilize the Division's penalty tree that he specifically stated was intended to ensure consistency.

"It is a well-established principal that the long standing interpretation of a statute by the administering agency should be given deference." 2002 N.C.A.G. 525, 2002 W.L. 431451 (N.C.A.G.) (citing *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984). "Administrative interpretation of a statute, acquiesced in over a long period of time, is properly considered in the construction of the statute by the courts." *Petty v. Owen*, 140 N.C. App. 494, 500, 537 S.E.2d 216, 220 (2000) (citing *Duggins v. Board of Examiners*, 25 N.C. App. 131, 137, 212 S.E.2d 657, 662, *cert allowed*, 287 N.C. 258, 214 S.E.2d 430 (1975) and *affirmed*, 294 N.C. 120, 240 S.E.2d 406 (1978)). Although not binding upon this Court, the advisory opinions of the Attorney General do merit "respectful consideration." *Williams v. Alexander County Board of Education*, 128 N.C. App. 599, 602, 495 S.E.2d 406, 408 (1998).

The majority states, *supra*, that "[e]ven though the agency had previously counted multiple piles as a single violation where a single penalty was considered sufficient to effect future compliance, it is not irrational or illogical to count each pile as one violation." The majority also correctly notes the deference properly given to an agency's interpretation of its own statutes. However, given the agency's longstanding prior history of interpreting violations of North Carolina General Statutes section 143-215.114A and 15A North Carolina Administrative Code 2D.1900 with multiple burn piles as constituting one violation of the statute and the code, *that* is the proper interpretation which should receive deference, not an interpretation in which the Deputy Director essentially throws out the rule book in order to assess a civil penalty inconsistent with the agency's previous actions.

Because I have determined that the agency acted in excess of its statutory authority by its actions in this instance in that it employed wholly new guidelines never utilized before that were not a part of its worksheet and it deviated from its penalty tree, it is unnecessary to determine at this time whether, after implementation of "adequate guiding standards," imposition of such a penalty would be appropriate.